**In re BALLESTER.**

No. 5234.

United States District Court
D. Puerto Rico, San Juan Division.

March 26, 1954.

**630**

Orlando J. Antonsanti, San Juan, P. R., for petitioner.

Douglas P. Lillis, Acting Dist. Counsel Immigration and Naturalization Service, Miami, Fla., for respondent.

RUIZ-NAZARIO, District Judge.

The petitioner, Francisco Ballester Pons, was born on May 21, 1908 in Soller, Mallorca, Spain. He is married to an American citizen. He entered the Unit-ed States for permanent residence at San Juan, Puerto Rico, on December 26, 1934. Petitioner has continuously resided in the United States for some 17 years. Mr. Ballester has by his industry become of a worth of more than $100,000. All of his interests, business and social, are in Puerto Rico, where he has entered the community whole-heartedly and is now a respectable, and respected member thereof.

Petitioner registered under the Selective Service and Training Act of 1940.[1] On October 21, 1944, he was directed to report for a pre-induction physical examination. By letter of November 1, 1944, after informing that he would comply with the direction of the Board, he states that, "As a Spanish citizen with residence in Puerto Rico, I wish to invoke the provisions of Article V, Paragraph I, of the Treaty signed between the United States of America and Spain on July 3, 1902, which reads as follows:

"The citizens or subjects of each of the High Contracting Parties shall be exempt in the territories of the other from all compulsory military service by land or sea, and from all pecuniary contributions in lieu of such, as well as from all obligatory official functions whatsoever." 33 Stat. 2108.

Prior to receipt by Mr. Ballester of the direction from the Local Board, his brother, Jaime Ballester Pons, also a citizen of Spain, had written to the Local Board with jurisdiction, claiming exemption under the same treaty, that is, Treaty between the United States and Spain of Friendship and General Relations, signed at Madrid, July 3, 1902; proclaimed, April 20, 1903, 33 Stat. at Large, Part 2, page 2105.

A series of letters and cables from his said brother Jaime Ballester, during 1942 and 1943, to the Spanish Ambassador to the United States, in connection with the former's alleged right to exemption from military service, was terminated by a cable of January 5, 1944,

1. Now 50 U.S.C.A.Appendix, § 451 et seq.

from Juan Cardenas, the Spanish Ambassador, who requested the Spanish Consul in San Juan to inform said Jaime Ballester that the Embassy's efforts to obtain an "automatic exemption" from military service had been unsuccessful, and advising that Ballester (Jaime) fill out the proper forms.

It was with the above experience of his brother in the background, that petitioner on November 1, 1944, wrote to his Local Board invoking the provisions of Article V of the Treaty aforesaid. Petitioner, who on November 2, 1944, subscribed and swore to DSS Form 301, "Application by Alien for Relief from Military Services", which it is now contended debars him from citizenship under Sec. 3(a) of the Selective Service and Training Act of 1940, as amended, 50 U.S.C.Appendix, § 303(a),[2] is now relying on Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729.

In that case, Moser, a Swiss citizen, some time before February 18, 1944, requested his Legation to assist him in being released, "unconditionally" from military service in accordance with the 1850 Treaty with Switzerland, 11 Stat. 587.

In response to the request of the Swiss Legation, the Department of State arranged for a revised procedure in claiming exemption. A revised DSS Form 301 was prepared for him to sign, with the express waiver of citizenship deleted. Moser, as stated by the Supreme Court, "was led to believe that" by signing the revised form he would not lose his rights to citizenship. It was in "justifiable reliance" on this advice that he signed the form. 341 U.S. at page 46, 71 S.Ct. at page 556.

▮ Fully aware of his brother's experience, petitioner signed Form DSS 301. He signed the form because, as he testified, he was told by the officials of Selective Service that he "had to sign the forms or go to Buchanan" (the induction center). Petitioner, unlike Moser, was not misled. No misrepresenta-

tion of any kind was made to him. Indeed, he, unlike Moser, was, by his own testimony perfectly aware of the fact that by signing the form he was forever debarring himself from American citizenship. The very arbitrariness he complains of excludes him from the protection of the Moser case—it was indeed that arbitrariness that must have made him understand and seriously weigh the two alternatives—either exemption without citizenship, or service with citizenship. He chose the former course intelligently, and cannot now allege successfully that, under the Moser case, he should have been afforded an opportunity to be deceived or misled by misrepresentations, as Moser was. That is what his principal contention is.

Moser did not knowingly and intentionally waive his rights to citizenship. As stated, 341 U.S. on page 47, 71 S.Ct. on page 556, of the opinion, "he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law."

Petitioner on the other hand, was afforded an opportunity to make such an election, and made it.

Petitioner devotes several pages of his brief trying to demonstrate that the factual situation in this case is not only parallel to but still more meritorious than that found by the Supreme Court to have existed in the Moser case.

The Court has carefully compared both factual situations and fails to find substantial parallel between them, much less the existence here of any additional factual considerations better entitling petitioner to the relief accorded to Moser.

Aside from the similarity of the provisions in the treaties invoked in both cases, and the fact that both aliens had registered under the Selective Service and Training Act of 1940, and had been called to report for induction, there is no other parallel between Moser and petitioner, as regards the vital issue which

2. Now 50 U.S.C.A.Appendix, § 454(a).

was the subject of relief in the Moser case.

Moser "had asserted a right to exemption *without debarment from citizenship.* * * * He was led to believe that he would not thereby lose his rights *to citizenship. If he had known otherwise he would not have claimed exemption.* In justifiable *reliance* on *this advice* he signed the papers sent to him by the Legation." 341 U.S. at page 46, 71 S. Ct. at page 556. (Emphasis supplied.)

He made no issue as to his loss of allegiance to Switzerland and does not appear to have been at all concerned with being subject to disciplinary action or reprisals by the Swiss military authorities.

Thus, to Moser, acquisition of American citizenship rather than loss of his Swiss citizenship, was the vital problem.

Petitioner here had not given any thought to American citizenship. The various letters and telegrams, as of the time he was called for induction, appearing of record, do not contain the slightest reference to American citizenship or to any desire or hope of petitioner of ever becoming an American citizen, nor of any concern on his part, whatsoever, for debarment from said citizenship. Moreover, his sworn statements before the various Immigration Officers who investigated his petition for Naturalization bear witness to the same fact, i. e., that acquisition of American citizenship was of no concern to him at the time.

Thus, when he was examined by Naturalization Examiner David L. Scoles on May 23, 1945, and on being confronted with DSS Form 301 signed by him on November 2, 1944, he admitted that he signed the same; that he reads English; that he read said Form before signing it, *that* when he signed it he *understood* that it contained the statement that the making of an application to be relieved from military service *would bar* him from becoming a *citizen of the United States*, not just for the duration of the War but *forever*; that his purpose in signing said Form was because he be-lieved that the Treaty with Spain automatically excluded him from military service in the United States of America; that *he knew that he was not required to seek exemption; that his action was entirely voluntary*; and that he shared the same understanding of many Spaniards who *did not wish to lose their Spanish* nationality and having *no thought of ever becoming American citizens,* had taken the same action on that basis; and that he fully understood the implications of his said action. (Exh. I, pp. 2 and 3.)

When he was later examined by Acting Immigration Inspector Albert G. Vaughan on March 29, 1951, and on being asked whether he had served in the United States Army, under the Selective Service Act of 1940, in what branch, and for how long, he answered:

"No, I did not serve. I made an application for relief, *due to the fact that I was at that time under the Spanish Army regulations,* so I signed the form to be relieved from military service, according to the Treaty of Paris, between Spain and the United States".

He was later questioned:

"What was your purpose or reason for requesting this relief?"

And answered:

"Well, as I told you before, I was subject to the Army regulations and subject to being called at any time by the Spanish Army, and I was not through with my oath with the Spanish Army."

When asked: *"Have you ever had,* or do you now have *the desire to become* a citizen of the United States?"

He replied: *"Before now, I have not had the desire but if you* ask me *from now on,* I would say *yes."* (Exh. III, pp. 5–6.)

In connection with the above, petitioner submitted a written statement, dated April 27, 1953 (Exh. II), claiming that he misunderstood the word "desire" for the word "decide", and requested that due note be taken of said discrepancy.

Finally, when he was examined on December 16, 1952, by Acting Naturalization Examiner Raymond H. Beers (Exh. V) he reiterated all that he had previously stated to the other examiners about the only reason he had for signing DSS Form 301, about his knowledge and understanding of the contents thereof; that *he had realized the full consequence of his act in signing said form*; that he read English when he signed it, and that he read the form before signing it.

He, nevertheless, stated that he was not sure whether the bar to becoming an American citizen would not be for a specified period of time but would be forever, because he was thinking that the treaty between Spain and the United States was still in force, and he had no alternative. *It was either sign or go to the training camp.* (At p. 5).

But then on being asked: "What was your purpose in making this application for relief from military service?" He answered: "The purpose was that I was under Spanish regulations and *I thought that I could not swear to another nation when I was on duty to my own."* (At p. 6).

In Form DSS 301, signed by petitioner on Nov. 2, 1944, he specifically stated: "I have not filed a declaration of intention to become a citizen of the United States". (Exh. VI.)

Therefore, to petitioner here, preservation of his allegiance to Spain and his Spanish citizenship, rather than acquisition of American citizenship, was the vital problem.

As to Moser, the Swiss Legation made representations to the Department of State, and through it to the Selective Service auhorities, and an agreement was negotiated for the adoption of Revised DSS Form 301, deleting the proviso of Sec. 3(a) debarring applicant from becoming a citizen of the United States. The Swiss Legation advised Moser that by signing said revised form he would not waive his right to apply for American citizenship papers. And it was un-der these circumstances that Moser signed said form.

In this connection, the Supreme Court said:

"The Court of Appeals has accepted, as do we, the finding of the District Court that petitioner signed the application for exemption *believing that he was not thereby precluded from citizenship*, and that *had he known claiming exemption would debar him from citizenship*, he would not have claimed it, but *would have elected to serve in the armed forces"*. 341 U.S. at page 45, 71 S.Ct. at page 555. (Emphasis supplied.)

As to the petitioner here, the Spanish Ambassador limited himself to advising that petitioner obtain extensions to report for induction until the ambassador could discuss the matter with the authorities in Washington, and, finally admitting that all his efforts for automatically excluding petitioner from military service had been unsuccessful, he advised petitioner to sign the proper forms. Petitioner, facing the only alternative that either he sign it or else report for induction, filled in and signed DSS Form 301.

Moser would have elected to serve in the armed forces (losing all allegiance to his native country) and would have refused to sign said form, if advised that by signing it he would be forever debarred from applying for American citizenship.

Petitioner would not have elected, as he did not elect, to serve in said forces, to avoid being deprived of his allegiance to his native country and its military authorities, and would have signed, as he did sign said form, even knowing as he knew, that by signing it he would be forever debarred from applying for American citizenship.

To Moser the representation that he would not be debarred from applying for American citizenship by signing said form, meant all:

To petitioner it would have meant nothing.

To Moser a representation that he would be the subject of reprisals from the Swiss military authorities and would be deprived of his Swiss citizenship, if he served in the Armed Forces of the United States, meant nothing, so long as he was not debarred from applying for American citizenship.

A similar representation to petitioner would have meant much, even if coupled with the advice that he would not be debarred from American citizenship.

The only thing that counted with Moser was the preservation of his right to apply for American citizenship; whether he had to serve in the Armed Forces or not and although he lost thereby all his ties with his native country and risked disciplinary measures from the military authorities thereof.

The only thing that counted with the petitioner here was the preservation of his allegiance to his native country and avoidance of the risk of reprisal or disciplinary measures from the military authorities thereof, whether he had to serve in the United States armed forces or not and although he would be forever debarred from applying for American citizenship.

Moser was deceived, and signed revised Form DSS 301 relying on the truthfulness of said deception.

Petitioner here was told the truth and signed Form DSS 301 consciously and with complete knowledge and understanding of what he was doing.

There is no material point of comparison between Moser's situation and the situation of the herein petitioner to support petitioner's claim of parallelism.

■ On this score alone, petitioner is forever debarred from citizenship. However, petitioner is in addition foreclosed from citizenship under Sec. 315 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426, which reads as follows:

"(a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

Petitioner contends that this section is inapplicable to his case, citing Petition of Berini, D.C., 112 F.Supp. 837. The short answer to this contention is that Berini, unlike Ballester, was in the same position as Moser.

Petitioner's other contention, i. e. that he was not eligible for service in the army of the United States because he was a member of the Spanish Army Reserve, is so frivolous that it is unnecessary to discuss it at length.

Therefore the Court, after having given full consideration to the whole record of this case, as well as to the Findings of Fact and Conclusions of Law arrived at by David L. Scoles, Designated Naturalization Examiner of the Immigration and Naturalization Service of the United States Department of Justice on August 17, 1953, forming part of said record, and in view of the above preceding Opinion, now adopts said Findings of Fact and Conclusions of Law as its own, and accordingly

Orders and adjudges that the petition for naturalization of petitioner Francisco Ballester Pons be as it is hereby denied.

Judgment shall be entered forthwith by the clerk upon receipt by her of this direction.