Francisco **BALLESTER** Pons, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 4865.

United States Court of Appeals, First Circuit.

March 22, 1955.

Jack Wasserman, Washington, D. C., with whom Orlando J. Antonsanti, San Juan, and David Carliner, Washington, D. C., were on the brief, for appellant.

Douglas P. Lillis, Acting District Counsel, Immigration and Naturalization Service, Miami, Fla., with whom Ruben Rodriguez Antongiorgi, U. S. Atty., San Juan, Puerto Rico, was on the brief, for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

We are quite satisfied that the district court correctly denied appellant's application for naturalization filed December 16, 1952, which is the subject matter of this appeal. That court ruled that appellant was, under the applicable Acts of Congress, forever barred from obtaining American citizenship by reason of having, as a resident alien and a citizen or subject of a neutral country, applied for and obtained exemption from military service under the Selective Training and Service Act of 1940, as amended. 54 Stat. 885, 55 Stat. 844, 50 U.S.C.A.Appendix, § 301 et seq., now covered by 50 U.S.C.A.Appendix, § 451 et seq.

Francisco Ballester Pons was born in Spain in 1908. He became from birth a Spanish subject and has remained such. On December 26, 1934, he entered the United States for permanent residence at San Juan, Puerto Rico. After visits to Spain in 1935 and 1936 he returned to Puerto Rico, where he has been continuously residing ever since. As stated by the district court, all of appellant's interests, business and social, "are in Puerto

Rico, where he has entered the community whole-heartedly and is now a respectable and respected member thereof."

On January 17, 1929, Ballester obtained from the Spanish Consul at Santo Domingo an identification card showing that he was a member of the Spanish Army Reserve. Under Spanish law, male Spanish nationals living in certain countries of Spanish origin could, by registration and money payment, plus the making of an annual report, be exempt from Spanish military service unless the outbreak of war required total Spanish mobilization. Appellant complied with this procedure for the required period of eighteen years, after which, in 1947, he was absolutely discharged from any further obligation to give military service to Spain. The bearing of the facts recited in this paragraph will become apparent subsequently.

A Treaty of Friendship and General Relations between the United States and Spain, signed at Madrid July 3, 1902, and proclaimed April 20, 1903, 33 Stat. 2105, provides in part as follows:

### "Article II.

"There shall be a full, entire and reciprocal liberty of commerce and navigation between the citizens and subjects of the two High Contracting Parties, who shall have reciprocally the right, on conforming to the laws of the country, to enter, travel and reside in all parts of their respective territories, saving always the right of expulsion which each Government reserves to itself, and they shall enjoy in this respect, for the protection of their persons and their property, the same treatment and the same rights as the citizens or subjects of the country or the citizens or subjects of the most favored Nation.

"They can freely exercise their industry or their business, as well wholesale as retail, without being subjected as to their persons or their property, to any taxes, general or local, imposts or conditions whatso-
ever, other or more onerous than those which are imposed or may be imposed upon the citizens or subjects of the country or the citizens or subjects of the most favored Nation.

"It is, however, understood that these provisions are not intended to annul or prevent, or constitute any exception from the laws, ordinances and special regulations respecting taxation, commerce, health, police, and public security, in force or hereafter made in the respective countries and applying to foreigners in general."

\*   \*   \*   \*   \*   \*

### "Article V.

"The citizens or subjects of each of the High Contracting Parties shall be exempt in the territories of the other from all compulsory military service, by land or sea, and from all pecuniary contributions in lieu of such, as well as from all obligatory official functions whatsoever. \* \* "

The treaty exemption in Art. V is from "compulsory military service," which leaves open and unprescribed the procedure by which a person called to service may manifest his unwillingness to serve —if such is his state of mind—and thus obtain his release from any military obligation. As applied to a given individual, Art. V is not "automatic" in the sense that the alien, if he is unwilling to render military service, may simply ignore a summons to service, or ignore the procedure, set up or authorized by legislative enactment, whereby the alien may claim his exemption from compulsory military service by making a declaration to the proper authorities of his unwillingness to serve.

Therefore, entirely consistent with the exemption contained in Art. V of the treaty, § 3(a) of the Selective Training and Service Act of 1940, 55 Stat. 845, provided as follows:

"Sec. 3. (a) Except as otherwise provided in this Act, every male citizen of the United States, and every

other male person residing in the United States, who is between the ages of twenty and forty-five at the time fixed for his registration, or who attains the age of twenty after having been required to register pursuant to section 2 of this Act, shall be liable for training and service in the land or naval forces of the United States: *Provided*, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States: *Provided further*, That no citizen or subject of any country who has been or who may hereafter be proclaimed by the President to be an alien enemy of the United States shall be inducted for training and service under this Act unless he is acceptable to the land or naval forces."

This statutory provision, it may be noted, enabled any neutral alien who was unwilling to render military service to the United States to be relieved from this liability, whether or not the alien was also covered by a treaty exemption as in Art. V of the treaty with Spain. Of course, this was a matter within the discretion of Congress; and the fact that the statutory provision for exemption was broader than that required by treaty in no way derogates from the conclusion that the Spanish alien's right under Art. V of the treaty was fully protected under § 3(a), as amended, of the Selective Training and Service Act. The clause in the first proviso of § 3(a), that any person who made application to be relieved from such military service, in accordance with regulations prescribed by the President, "shall thereafter be debarred from becoming a citizen of the United

States", is not in conflict with Art. V of the treaty, for nothing in Art. V, and indeed nothing in the whole treaty, purports to impose any limitation upon the power of the respective countries to formulate the conditions of eligibility for naturalization. As the Supreme Court stated in reference to a similar provision of the treaty with Switzerland: "That the statute unquestionably imposed a condition on exemption not found in the Treaty does not mean they are inconsistent. Not doubting that a treaty may be modified by a subsequent act of Congress, it is not necessary to invoke such authority here, for we find in this congressionally imposed limitation on citizenship nothing inconsistent with the purposes and subject matter of the Treaty. The Treaty makes no provision respecting citizenship." Moser v. United States, 1951, 341 U.S. 41, 45, 71 S.Ct. 553, 555, 95 L.Ed. 729.

■ It is suggested by appellant that the bar to naturalization contained in the proviso of § 3(a) was inconsistent with certain other provisions of the treaty with Spain. We do not think that this was so. But we do not stop to labor the point, for even if it were so, it is perfectly well-settled that provisions of a subsequent Act of Congress may, for purposes of domestic law, supersede inconsistent provisions of a prior treaty with a foreign country. See Head Money Cases (Edye v. Robertson), 1884, 112 U.S. 580, 597–599, 5 S.Ct. 247, 28 L.Ed. 798; Pigeon River Improvement, Slide & Boom Co. v. Charles W. Cox, Ltd., 1934, 291 U.S. 138, 160, 54 S.Ct. 361, 78 L.Ed. 695; Clark v. Allen, 1947, 331 U.S. 503, 508–509, 67 S.Ct. 1431, 91 L.Ed. 1633.

Appellant duly registered under the Selective Training and Service Act of 1940. On October 21, 1944, he was directed by his draft board to report for pre-induction physical examination.

The administrative regulation which had been issued under authority of § 3(a) of the Act required a neutral alien, seeking to be relieved from military service, to execute DSS Form 301 (Application by Alien for Relief from Military

Service), which application form read in part as follows: "I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the Act of Congress, approved December 20, 1941. I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States. I have not filed a declaration of intention to become a citizen of the United States."

It appears that in 1942 appellant's brother, Jaime Ballester Pons, upon receiving a notice to report for induction, had sought to claim automatic exemption from service by virtue of Art. V of the treaty with Spain. The draft board, however, insisted that Jaime would have to execute DSS Form 301 if he wished to be relieved from military duty. Thereupon Jaime communicated with the Spanish Ambassador to the United States seeking support for his claim that it was unnecessary for him to execute DSS Form 301 in view of Art. V of the treaty. However, on January 5, 1943, the Spanish Ambassador advised Jaime to execute DSS Form 301, which he did.

When appellant received his notice to report for pre-induction examination, he at first sought unsuccessfully, as had his brother, to invoke the treaty without executing DSS Form 301. However, he was informed by the draft board that he would either have to make application for relief under DSS Form 301 or else prepare for induction. On November 2, 1944, appellant executed DSS Form 301 and was placed by his draft board in category IV-C (Neutral aliens requesting relief from training and service); a little over one year later he was reclassified IV-A (Over the age of liability for military service). The question is whether the alien in thus applying to be relieved of liability to military service rendered himself ineligible for subsequent naturalization.

Appellant's main reliance is upon Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729. In that case the resident alien was exempted from compulsory military service by a provision of the treaty with Switzerland. When the draft board classified him I-A (Available for military service), the alien sought the aid of the Swiss Legation in securing his deferment in accordance with the treaty. The Swiss Legation protested to the Department of State that the declaration required of applicants in filing DSS Form 301 was inconsistent with the treaty right of Swiss citizens. The State Department, assuring the Swiss Legation that the United States had no intention of abrogating treaty rights, negotiated an agreement with Selective Service Headquarters upon a Revised Form 301 which omitted the waiver declaration, though a footnote of the Revised Form did quote the pertinent provisions of § 3(a). The Swiss Legation forwarded to the alien a copy of this Revised DSS Form 301 which it requested him to execute. The letter of the Swiss Legation assured the alien that "through filing of DSS Form 301, revised, you will not waive your right to apply for American citizenship papers." Under these circumstances the alien signed the Revised Form 301, and his draft board reclassified him IV-C. A finding of the district court, accepted by the court of appeals and by the Supreme Court, was to the effect "that petitioner signed the application for exemption believing that he was not thereby precluded from citizenship, and that had he known claiming exemption would debar him from citizenship, he would not have claimed it, but would have elected to serve in the armed forces."

The Supreme Court held as a matter of law that § 3(a) of the Act "imposed a valid condition on the claim of a neutral alien for exemption; petitioner had a choice of exemption and no citizenship, or no exemption and citizenship." 341 U.S. at page 46, 71 S.Ct. at page 556. It could hardly be suggested that this alternative was an unconscionable one, applicable as it was not to aliens who were only temporary sojourners in the United

States, but only to resident aliens "who sought the advantages of our life and the protection of our flag". McGrath v. Kristensen, 1950, 340 U.S. 162, 175–176, 71 S.Ct. 224, 232, 95 L.Ed. 173. But the Supreme Court read into § 3(a) the implication that the bar to naturalization would not operate until the alien had made an intelligent choice between the alternatives presented, well knowing the legal effect of what he did. For that reason, in order not to "entrap" the alien, the Court held that he had not waived his right to apply for future naturalization by having executed the Revised DSS Form 301. "Petitioner did not knowingly and intentionally waive his rights to citizenship. In fact, because of the misleading circumstances of this case, he never had an opportunity to make an intelligent election between the diametrically opposed courses required as a matter of strict law. Considering all the circumstances of the case, we think that to bar petitioner, nothing else than an intelligent waiver is required by elementary fairness." 341 U.S. at page 47, 71 S. Ct. at page 556.

■ The case at bar presents a significantly different picture from that in Moser v. United States. No misrepresentations were made to Francisco Ballester Pons; he was never deceived as to the legal effect of applying for relief from military duty by executing DSS Form 301. In asking to be so relieved, his only purpose, as his testimony showed, was to avoid possible penalties under the Spanish law for entering the military service of the United States when he was still under a conditional commitment to military service in Spain in his capacity as a member of the Spanish Army Reserve. The district court found [119 F.Supp. 631], upon ample evidence, that when appellant came to execute DSS Form 301, he was "perfectly aware of the fact that by signing the form he was forever debarring himself from American citizenship." The fact that this was the only way he could avoid the obligation to report for induction did not constitute such "duress" as

would negative " 'an intelligent election' " on his part; it was of the essence of the alternatives lawfully presented to him that he "had a choice of exemption and no citizenship, or no exemption and citizenship." We shall say no more in elaboration upon the inapplicability of Moser v. United States to the case at bar, since the point has been so fully and convincingly discussed in the opinion of the district court. 119 F.Supp. 629.

■ When Congress by amendment in 1941 of § 3(a) of the Selective Training and Service Act provided that "any person who makes such application shall thereafter be debarred from becoming a citizen of the United States", 55 Stat. 845, it omitted to make a corresponding amendment of the substantive provisions of the Nationality Act of 1940, 54 Stat. 1137, prescribing the conditions of eligibility for naturalization. And § 3(a), along with the other sections of the Selective Training and Service Act of 1940, as amended, became inoperative and ceased to apply on the indicated date in 1947, as provided in the Act of June 29, 1946, 60 Stat. 342. But meanwhile, on October 29, 1945, 59 Stat. 551, Congress had amended § 28(c) of the Immigration Act of 1924, 43 Stat. 168, so as to include within the term " 'ineligible to citizenship' " persons debarred from citizenship under § 3(a) of the Selective Training and Service Act of 1940, as amended; and it has uniformly been held that in so doing Congress intended to continue in effect the disqualification to naturalization in § 3(a) of the Selective Training and Service Act. See Benzian v. Godwin, 2 Cir., 1948, 168 F.2d 952, 956–957, certiorari denied 1948, 335 U.S. 886, 69 S. Ct. 235, 93 L.Ed. 425.

■■ If the matter were otherwise doubtful, it was set at rest by provisions of the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq., which became effective December 24, 1952, 66 Stat. 281, 18 U.S.C.A. § 1101 note. Appellant had filed his petition for naturalization on the preceding December 16, 1952, on which date he was in-

eligible to citizenship by virtue of the amended § 28(c) of the Immigration Act of 1924, as above stated. The Immigration and Nationality Act of 1952 repealed the Immigration Act of 1924, 66 Stat. 279, § 403(b), 8 U.S.C.A. § 1101 note. But § 405(b) of the Immigration and Nationality Act, 66 Stat. 280, 8 U.S.C.A. § 1101 note, provides that any petition for naturalization pending on the effective date of the Act shall be determined in accordance with the requirements of law in effect when such petition was filed, except as otherwise specifically provided in Title III. Turning then to Title III of the Act, § 315 thereunder, captioned "Alien Relieved from Training and Service in the Armed Forces of the United States because of Alienage Barred from Citizenship", provides as follows, 66 Stat. 242, 8 U.S.C.A. § 1426:

"Sec. 315. (a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

This section would seem clearly enough to constitute an absolute bar to citizenship, even for a person who had petitioned for naturalization prior to the effective date of the Act, and regardless of whether exemption from military service was sought and obtained under the regulations prescribed by the President pursuant to § 3(a) of the Selective Training and Service Act, as amended, or by virtue of an exemption contained in a treaty. In this respect the bar of § 315 (a) of the Immigration and Nationality Act is wider than that of § 3(a) of the Selective Training and Service Act, and would have precluded appellant even if he had not executed DSS Form 301 in claiming the exemption. It is true that § 357 of the Immigration and Nationality Act provides, 66 Stat. 272, that nothing in Title III "shall be applied in contravention of the provisions of any treaty or convention to which the United States is a party and which has been ratified by the Senate upon the effective date of this title". 8 U.S.C.A. § 1489. But as pointed out earlier in this opinion, excluding from eligibility to citizenship resident aliens who have chosen not to render military service to the United States is not inconsistent with the treaty provisions. Furthermore, in this connection the government calls our attention to § 101(a) (19) of the Immigration and Nationality Act, 66 Stat. 169, which provides as follows:

"(19) The term 'ineligible to citizenship,' when used in reference to any individual, means, *notwithstanding the provisions of any treaty relating to military service*, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4(a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76), or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts." 8 U.S.C.A. § 1101(a) (19). [Italics added.]

The judgment of the District Court is affirmed.