Joseph SAVORETTI, District Director of Immigration and Naturalization, Appellant,

v.

Jorge Eduardo Manzano SMALL, Appellee.

No. 16252.

United States Court of Appeals Fifth Circuit.

May 1, 1957.

O. B. Cline, Jr. and Richard Booth, Asst. U. S. Attys., James L. Guilmartin U. S. Atty., Miami, Fla., for respondent-appellant, Bernard S. Karmiol, Immigration & Naturalization Service, Miami, Fla., of counsel.

Louis A. Sabatino, Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellee, Jorge Eduardo Manzano Small, is a native and citizen of Argentina. In an administrative deportation proceeding he was found subject to deportation as being ineligible to citizenship. That determination was vacated and deportation was enjoined by a judgment of the District Court for the Southern District of Florida upon a review of the administrative order. Before this Court is the appeal of the District Director of Immigration and Naturalization from the judgment of the District Court.

The first entry of Small into the United States was on January 13, 1942, as a temporary visitor for a six months' period. An extension was granted. On May 11, 1943, he signed and filed with the proper Draft Board, Local Board No. 31, New York City, an Alien's Personal History and Statement known as Form DSS 304. In filling out the answers to the questions on this form Small stated that he objected to service in the land or naval forces of the United States. To this he added the handwritten statement, "I object as I feel that I am exempt because I'm an alien student." On this form, immediately below the question as to objection to service, appeared the following:

"You are informed that if you are an enemy alien or subject of a country allied with the enemy, you will not ordinarily be acceptable for service in the land or naval forces of the United States if you indicate in Item 41 above that you object to such service. If you are a citizen or subject of any other country, you may indicate in Item 41 whether you do or do not object to service in the land or naval forces of the United States but such objection may be disregarded. If you are a citizen or subject of a neutral country, and you do not wish to serve in the land or naval forces of the United States, you may apply to your local board for Application by Alien for Relief from Military Service (Form 301) which, when executed by you and filed with the local board, will relieve you from the obligation to serve in the land or naval forces of the United States, but will also debar you from thereafter becoming a citizen of the United States."

On August 25, 1943, Small executed and filed with the Local Board Form DSS 301, Application by Alien for Relief from Military Service. Its pertinent language is:

"I do hereby make application to be relieved, from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the act of Congress, approved December 20, 1941. I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States."

The Selective Training and Service Act, as amended, contained the following provisions:

"Except as otherwise provided in this Act, it shall be the duty of every male citizen of the United States, and of every other male person residing in the United States, who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and sixty-five, to present himself for and submit to registration at such time or times and place or places, and in such manner and in such age group or groups, as shall be determined by rules and regulations pre-

scribed hereunder." 50 U.S.C.A. Appendix, § 302.[1]

"Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States, who is between the ages of eighteen and forty-five at the time fixed for his registration, shall be liable for training and service in the land or naval forces of the United States. *Provided*, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States." 50 U.S.C.A.Appendix, § 303(a).[2]

"The President is authorized—

"(1) to prescribe the necessary rules and regulations to carry out the provisions of this Act; * *" 50 U.S.C.A.Appendix, § 310(a).[3]

The Selective Training and Service Act of 1940, 54 Stat. 885, provided:

"The President is further authorized, under such rules and regulations as he may prescribe, to delegate and provide for the delegation of any authority vested in him under this Act to such officers, agents, or persons as he may designate or appoint for such purpose or as may be designated or appointed for such purpose pursuant to such rules and regulations as he may prescribe." Act Sept. 16, 1940, c. 720, 54 Stat. 885, 894, § 10(b).

By an Act of December 5, 1943, c. 342, 57 Stat. 596, 598, the foregoing provision was amended so as to read:

"The President is authorized to delegate to the Director of Selective Service only, any authority vested in him under this Act (except section 9). The Director of Selective Service may delegate and provide for the delegation of any authority so delegated to him by the President and any other authority vested in him under this Act, to such officers, agents, or persons as he may designate or appoint for such purpose or as may be designated or appointed for such purpose pursuant to such rules and regulations as he may prescribe." 50 U.S.C.A.Appendix, § 310(b).

The President prescribed Selective Service Regulations to govern the administration of the Act. Executive Order No. 8545, Sept. 3, 1940, 3 C.F.R.Cum.Supp. Book 1, p. 719. Among these was the provision that the Director of Selective Service is charged with the administration of the Selective Service Law and is authorized and directed to prescribe such amendments to the regulations as he shall deem necessary. Id. p. 722. Acting, or purporting to act, under the delegated authority, the Director of Selective Service promulgated further regulations, among them being the following:

"When a nondeclarant alien is residing in the United States. Every male alien who is now in or hereafter enters the United States who has not declared his intention to become a citizen of the United States, unless he is in one of the categories specifically excepted by the provisions of 611.13, is 'a male person residing in the United States' within the meaning of Section 2 and Section 3 of the Selective Training and Service Act of 1940, as amended." Selective Service Regulations 611.12, 32 C.F.R.Cum.Supp. Book 6, p. 9121.

"When a nondeclarant alien is not residing in the United States. A male alien who is now in or here-

---

1. Now 50 U.S.C.A.Appendix, § 453.
2. Now 50 U.S.C.A.Appendix, § 454.

3. Now 50 U.S.C.A.Appendix, § 460.

after enters the United States who has not declared his intention to become a citizen of the United States is not 'a male person residing in the United States' within the meaning of Section 2 or Section 3 of the Selective Training and Service Act of 1940, as amended; provided he has in his personal possession an official document issued pursuant to authorization of or described by the Director of Selective Service which identifies him as a person not required to present himself for and submit to registration and provided:

\* \* \* \* \* \*

"(6) He has entered or hereafter enters the United States in a manner prescribed by its laws and does not remain in the United States after May 16, 1942, or for more than three months following the date of his entry, whichever is the later; or

"(7) He has, within the time prescribed and in the manner provided in 611.21, filed with the local board with which he registered, or if he is not registered with the local board having jurisdiction over the area in which he is located, an Alien's Application for Determination of Residence (Form 302), together with an Alien's Personal History and Statement (Form 304), and such application is either pending or has resulted in the issuance by the local board of an Alien's Certificate of Nonresidence (Form 303) which has not expired.

"(8) He is an individual designated by the Director of Selective Service as not required to present himself for and submit to registration; \* \* \*" Id. p. 9121.

"What aliens may apply for a determination. Any nondeclarant alien who has entered or who hereafter enters the United States in a manner prescribed by its laws \* \* \* may file with his local board, if he is registered, or with the local board where he is at the time located, if he is not registered, an Alien's Application for Determination of Residence (Form 302); provided that such application is filed within three months after the date of his entry into the United States or within three months after persons of his age become liable for training and service by law whichever is the later; and provided further, that such application is filed prior to induction. An Alien's Personal History and Statement (Form 304) must be filed with such application." Id. p. 9122.

Regulations 611.12 and 611.13 became effective on February 7, 1942. Regulation 611.21 became effective March 17, 1942.

Although Small filed the Alien's Personal History and Statement, Form D SS 304, he did not file the Alien's Application for Determination of Residence. Argentina ceased to be a neutral, and upon her becoming an ally of the United States, the right of Small to be exempt from service ended. He was classified 1 A on April 4, 1945, but having become thirty years of age and the end of the war soon following, he was never called for service. Small, in the United States as a temporary visitor, in 1945 availed himself of a privilege of voluntary departure granted in a deportation proceeding. He came in again the same year as an immigrant for permanent residence. He left, came back in 1952 with a non-quota visa, left again the same year with a reentry permit with which he returned in 1953, and has since been in the United States.

The Special Inquiry Officer of the Immigration and Naturalization Service found that Small was subject to deportation on the ground that at the time of his last entry he was ineligible to citizenship. 8 U.S.C.A. § 1182(a) (22). An appeal to the Board of Immigration Appeals was taken by Small and the appeal was dismissed. On a petition

for review the district court found that Small did not knowingly and intentionally waive his rights to citizenship in seeking relief from military service. It was also held that Selective Service Regulations were void for two reasons; first, the attempted delegation by Congress of the rule-making power as contained in the Selective Service Act was ineffective, and second, the regulations attempted to alter the immigration laws.

■ With respect to the validity of the authorization by the President of another to exercise the function of delegating the power to make rules and regulations, it has been well said that, "Obviously all the functions of his great office cannot be exercised by the President in person". United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 5, 71 L.Ed. 131. The Supreme Court has sustained the delegation of the rule-making power under the Selective Training and Service Act and has held:

"The rule-making power under the Act is vested in the President. § 10(a) (1), 50 U.S.C.A.Appendix § 310(a) (1). The President in turn is given the power to delegate that authority. § 10(b). And during the period here in question as at the present time, the President had delegated it to the Director of Selective Service. Exec. Order, No. 8545, Sept. 23, 1940, 5 Fed. Reg., pp. 3779, 3781. The Act and the regulations promulgated under it give the selective process its integrated nature." Billings v. Truesdell, 321 U.S. 542, 552, 64 S.Ct. 737, 743, 88 L.Ed. 917.

The case arose after the section of the Act as to delegation was amended. On this the court commented:

"Sec. 10(b) as originally enacted contained no limitation as to the persons to whom that authority might be delegated. But by the Act of December 5, 1943, 57 Stat. 598, § 10(b) 50 U.S.C.A.Appendix § 310(b) was amended to read: 'The President is authorized to delegate to the Director of Selective Service only, any authority vested in him under this Act (except section 9).'" 321 U.S. 552, 64 S.Ct. 737, 743.

The authority of the President to delegate powers and duties has received full and extended consideration by this Court in a case involving the War Powers Act, 50 U.S.C.A.Appendix, §§ 633, 1152. In upholding the regulations which had been attacked, this Court said:

"By the express provisions of the War Powers Act, the President may 'exercise any power, authority, or discretion conferred upon him through such department, agency, or officer of the government, as he may direct.' The executive orders provide that the Chairman of the War Production Board may perform the functions and duties and exercise the powers, authorities and discretion conferred upon him through such officials or agencies and in such manner as he may determine. These express provisions aside, we think it is too clear for debate that Congress, in conferring the powers in question, did not expect or intend that the President should in person execute all of the tremendous powers and in person discharge all the vast duties imposed upon him, and that if there had been no express authority to act by deputies, that authority would have been implied. The long and unbroken history of our government presents not a few, but a multitude of, instances where powers, the nature of which are such that they are impossible of personal execution, have been delegated to an office or a department. In all of those cases, the established practice has been that the duties so delegated are performed by the many persons the delegate has selected to perform them. The Post Office Department is a notable instance of this kind.

The large delegations and subdelegations made under the Selective Service Acts are also in point; as are cases dealing with the handling of, and taxes on, imports." Shreveport Engraving Co. v. United States, 5 Cir., 1944, 143 F.2d 222, 226, certiorari denied 323 U.S. 749, 65 S.Ct. 82, 89 L.Ed. 600, rehearing denied 323 U.S. 815, 65 S.Ct. 128, 89 L.Ed. 648.

In the cited case, as in the case here, the question of redelegation was injected and it was disposed of in this manner:

"But if we could agree with appellant that what has taken place here has been a redelegation or subdelegation, we still could not agree with him that this has made the orders and directives invalid. For it seems to be settled law that, 'The same principles which will admit of delegation in any case may suffice to justify a redelegation or subdelegation'". 143 F.2d 228.

The regulations were validly adopted in the proper exercise of properly delegated authority. Cf. Dingman v. United States, 9 Cir., 1946, 156 F.2d 148, certiorari denied 329 U.S. 730, 67 S.Ct. 86, 91 L.Ed. 630, 631, rehearing denied 329 U.S. 831, 67 S.Ct. 479, 91 L.Ed. 705.

The appellee, Small, seeks to bring himself within the doctrine of Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 554, 95 L.Ed. 729. Moser was a native and citizen of Switzerland. A treaty between the United States and Switzerland provides that the citizens of each country should be free from military service to the other. Moser registered, was classified 1-A and sought help from the Swiss Legation which requested that, in accordance with the treaty, Moser be released from liability for service. The State Department, Selective Service Headquarters and the Swiss Legation worked out a revised Form 301 which omitted the waiver. This form was sent to Moser by the Swiss Legation which said to him, by letter transmitting the form, "You will not waive your right to apply for American Citizenship papers." Moser was led to believe that in asserting his treaty right he was not forfeiting his rights to citizenship and had he believed otherwise he would not have claimed exemption. Moser was held not to have waived his rights to citizenship. Small is in no such favorable position. He claims no benefit of a treaty. The Form 301 he signed contained the recital that he understood that the making of the application would debar him from citizenship. This was not in the application which Moser signed. There is no showing that Small did not fully understand the effect of his avoidance of service in the military forces of the United States. Asserting that he was acting pursuant to directions of the Consul of Argentina in claiming his exemption from military service, he contends that this deprived his act of its voluntary character. If Small felt under the obligation to follow such directions, we cannot say that he would thereby be permitted to avoid the effect of his claimed right to escape duty to the United States. Whatever may be the effect of directions given by a consular officer to a national of his government, they cannot alter the status of an alien within the United States or change the operation of its laws as they affect such alien. There was no coercion such as would, in contemplation of law, deprive the act of Small of its voluntary character. Cf. Petition of Coronado, D.C.E.D.N.Y., 132 F.Supp. 419, affirmed 2 Cir., 1955, 224 F.2d 556; In re Ballester, D.C.Puerto Rico, 1954, 119 F.Supp. 629, affirmed Ballester v. United States, 1 Cir., 1955, 220 F.2d 399.

But, says Small, he was not a resident within the meaning of the Selective Training and Service Act. Regulation 611.21 which fixes the time for making application by Form DSS 302, Application for Determination of Residence, Small asserts, was never brought to his attention. The Regulation, Small con-

tends, was void and hence he comes within the rule announced in McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173. Kristensen registered and claimed his exemption on March 30, 1942, during the grace period of Sec. 611.13, and therefore not covered by the provision of Sec. 611.12 providing that aliens, except those designated, are residents. In the Kristensen case it was said:

"But the Act did not define who was a 'male person residing in the United States,' liable for training and service after December 20, 1941. 55 Stat. 845. Such precisiveness was left for administrative regulation. Section 10(a) and (b), 54 Stat. 893, 894, authorized the President to prescribe rules and regulations for the Act with power of delegation. The President prescribed the first regulations on September 23, 1940, and authorized the Director to prescribe amendments. Exec. Order 8545, 3 CFR, 1943 Cum.Supp., 719, 722. Amendments promulgating the regulations here applicable were issued, effective February 7, 1942, 7 Fed.Reg. 855." McGrath v. Kristensen, 340 U.S. 162, 173, 71 S.Ct. 224, 231.

The contention made by Small has been considered in the District of Columbia Circuit. By that court the Kristensen case was distinguished from a case where the Regulations were applicable, and after making that distinction in its opinion the court continued:

"Appellant argues, however, that regulations which, in his case, make a mere temporary visitor of four months a resident cannot be valid. We disagree. The regulations do not arbitrarily state that anyone who remains here longer than three months shall be deemed a resident regardless of the purpose, duration or circumstances of his presence. They merely require that one who comes to this country in time of war must act within three months to have his status as a resident determined. If the required application is filed, the alien will have his case judged by the applicable administrative and judicial standards." Machado v. McGrath, 1951, 90 U.S. App.D.C. 70, 193 F.2d 706, 708, certiorari denied 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705.

If there had been doubt as to whether Small had become ineligible for citizenship and hence subject to deportation, that doubt has been resolved by the recent decision of the Supreme Court of the United States. One Ceballos, like Small, filed Form DSS 304, Alien's Personal History and Statement, and in it declared his objection to service in the land or naval forces of the United States. He filed Form DSS 301, Application by Alien for Relief from Military Service. When Colombia, the country of which Ceballos was a citizen, entered the war he was classified 1-A but was rejected for service because of physical defects. In holding Ceballos ineligible for citizenship the court said:

"The neutral alien in this country during the war was at liberty to refuse to bear arms to help us win the struggle, but the price he paid for his unwillingness was permanent debarment from United States citizenship." Ceballos v. Shaughnessy, 352 U.S. 509, 77 S.Ct. 545, 549, 1 L.Ed.2d 583.

Having concluded that the judgment of the district court was erroneous, it is reversed and here rendered for the appellant.

Reversed and rendered.