**Petition for Naturalization of Louis Estanislao VELASQUEZ.**

**No. 603305.**

United States District Court
S. D. New York.

April 4, 1956.

Saul S. Berzin, New York City, for petitioner.

William J. Kenville, New York City, Naturalization Examiner.

BICKS, District Judge.

On December 13, 1951 Louis Estanislao Velasquez filed a petition for naturalization under the provisions of Section 310(b)[1] of the Nationality Act of 1940.[*] He is a native and national of Peru, was born on May 7, 1904, and has resided continuously in the United States since his lawful admission for permanent residence on January 18, 1929.

It is opposed on the ground that petitioner availed himself of the right to apply to be relieved of military service afforded to citizens or subjects of neutral countries. See § 3(a) of the Selective Training and Service Act of 1940, 54 Stat. 885, as amended 55 Stat. 844, 50 U.S.C.A. Appendix, § 303(a),[†] hereinafter refered to as the "Act".[2]

---

1. Section 310(b) waives certain requirements for naturalization, not here material, by spouses of citizens.

\* Now Immigration and Nationality Act 1952, 8 U.S.C.A. § 1430(a).

† Now Universal Military Training and Service Act, 50 U.S.C.A. Appendix, § 454.

2. Section 3(a) provided:
   "Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States, who is between the ages of twenty and forty-five at the time fixed for his registration or who attains the age of twenty after having

Consistent with the requirements of § 2 of the Act,** Velasquez, a male alien within the prescribed age limits, residing in the United States, presented himself for and submitted to registration with his appropriate Local Draft Board. Thereafter and on August 1, 1942, he was classified 1–A, the class reserved for registrants available for military service. As an alien, petitioner was obligated to, and did on August 28, 1942, execute and file with his Local Draft Board Form 304 entitled "Alien's Personal History and Statement." Section XI, Item 41 of said form, captioned "Statement of Alien", advised the alien that if he is a citizen or subject of a neutral country and does not wish to serve in the armed forces of the United States he may apply to the local board for, quoting, "Application by Alien for Relief from Military Service (Form 301) which, when executed by you and filed with the local board, will relieve you from the obligation to serve—but will also debar you from thereafter becoming a citizen of the United States" and required him to indicate whether he did or did not object to such service. Petitioner indicated on said form that he did not object. Some three months thereafter, and while classified 1–A, he apparently suffered a change of heart and mind, applied for and filed with the local board a Form 301—completed in his own hand and subscribed and sworn to by him before an official of the local board. Petitioner declared therein, "I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States." On December 5, 1942 induction of registrants over 38 years of age was halted by order of the President of the United States pursuant to the authority vested in him by § 5(e) †† of the Act. The issuance of this order was given widespread publicity and was the subject of the lead article in the December 6th edition of the New York Times. The sub-head thereof, in approximately one-third inch capital letters, read "Draft Stops at 38".[3] The next day petitioner delivered the following memorandum to his local draft board:

"In view that I want to be useful to the country, I ask the formula [sic] 301 which I filled [sic] a couple of days ago, to be destroyed.

New York, Dec. 7, 1942
Louis E. Velasquez."

In the view the Court takes of this matter it is not necessary to adjudicate whether the filing of petitioner's request for the withdrawal of his Form 301 the day immediately following public announcement that persons in his age group would be deferred was a mere happenstance.

While Congress may not have had the power to compel petitioner, as it did citizens, to heed the call to arms, it could and did, in Section 3(a)[4] of the Act, debar him from becoming a citizen if he chose to demand exemption. See Benzian v. Godwin, 2 Cir., 1948, 168 F.2d 952, 954, certiorari denied, 1948, 335 U.S. 886, 69 S.Ct. 235, 93 L.Ed. 425.

---

been required to register pursuant to Section 2 of this Act, shall be liable for training and service in the land or naval forces of the United States: *Provided*, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be de-

barred from becoming a citizen of the United States: * * *."

** Now Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 453.

†† Now Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 456.

3. Prominent notice of this order also appeared in other New York newspapers on December 6, 1942, see e. g. New York Herald-Tribune, p. 1, "Draft Stops at 38" and New York Daily News, p. 2, "38's —Up Out of Draft".

4. See note 2, supra.

■ The substance of the disability provision in Section 3(a) has been incorporated in all amendments to the Act, in the Universal Military Training and Service Act of June 24, 1948, 62 Stat. 604, § 4(a), 50 U.S.C.A.Appendix, § 454; in the Immigration Act of 1924, 43 Stat. 168, § 28(c) as amended October 29, 1945, 59 Stat. 551; and in the Immigration and Nationality Act of 1952, 66 Stat. 163, § 101(a) (19), 8 U.S.C.A. § 1101(a) (19). Although the Act expired in 1947, the disability incurred by a person who executed Form 301 did not expire with it. Machado v. McGrath, 1951, 90 U.S.App.D.C. 70, 193 F.2d 706, certiorari denied, 1952, 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705; Benzian v. Godwin, supra; Ballester Pons v. United States, 1 Cir., 1955, 220 F.2d 399, certiorari denied, 1955, 350 U.S. 830, 76 S.Ct. 62.

Petitioner would be relieved of the consequences of having filed Form 301, prescribed by the Act because, he urges, promptly after so doing he realized he erred. He does not and, indeed, cannot well suggest that when he filed his demand for relief from military training and service he was deceived or in any wise deprived of an opportunity to make an intelligent election. Neither does he deny that he was fully aware of the consequences of his conduct. After residing in this country fourteen years and advantaging himself of the benefits and priceless privileges that were his as such a resident, when put to the choice of exemption and no citizenship, or no exemption and citizenship, petitioner knowingly and deliberately chose the former, and, with the instrument expressing that choice, surrendered up his copy of his declaration of intention to become a citizen.

Petitioner's brief argues that the refusal of the local draft board to destroy his Form 301 was motivated by animus toward him. Evidence thereof, he contends, can be gleaned from a memorandum placed in his selective service file which in part reads as follows: " * * * This registrant on finding out that we are not calling registrants over thirty-eight, he filed notice that he wants his citizenship papers returned to him. * * * To give him back his first papers and destroy Form 301 would be similar to giving the rights of citizenship to these other men who have filed Form 301 after the obligation of military service has expired."

Even assuming, arguendo, prejudice on the part of the draft board against petitioner generated by his having filed the Form 301, it would have no bearing upon the disability which, under the clear mandate of the Act, flowed from filing Form 301. Barreiro v. McGrath, D.C.N.D.Cal.S.D.1952, 108 F.Supp. 685, modified Barreiro v. Brownell, 9 Cir., 1954, 215 F.2d 585, certiorari denied 1954, 348 U.S. 887, 75 S.Ct. 207, 99 L. Ed. 697; In re Molo, D.C.S.D.N.Y. 1952, 107 F.Supp. 137; Petition of Fatoullah, D.C.E.D.N.Y.1948, 76 F.Supp. 499; In re Martinez, D.C.Pa.1947, 73 F. Supp. 101. Congress nowhere provided for the withdrawal of a Form 301 once filed, nor that the bar to citizenship incurred by such filing would be removed by subsequent eligibility for service, created, for instance, by entrance of the alien's formerly neutral country into the war. More than a year after petitioner filed his claim for exemption Local Board Memorandum No. 112 was amended to permit a person situated as was petitioner to remove some of the stigma, but not the disability, by volunteering for induction.[5] Since petitioner did not so

5. As to the effect of that amendment see Machado v. McGrath, supra, where the Court noted, 193 F.2d at page 707:
"In his brief, appellant does not argue that his request for withdrawal of DSS Form 301 should operate to cancel the disability he incurred by filing it. Nor does the complaint allege that Machado

followed the correct procedure in requesting withdrawal of the form. Local Board Memorandum No. 112, in effect throughout the period involved herein, provided that requests for induction by aliens who had filed DSS Form 301 should be made in an Application for Voluntary Induction (Form 165). Draft boards were in-

volunteer the effect of voluntary induction post the filing of Form 301 need not be considered.

Petitioner contends that he does not fall within the class of persons declared ineligible for citizenship in Section 315 of the Immigration and Nationality Act[6] because, while he applied for relief from military service on account of neutral alienage, he was not relieved or discharged therefrom on such ground. He concedes that the local board put him in the class reserved for aliens who claimed exemption and that Section 315 (b) provides that the records of the Selective Service System are "conclusive as to whether [the] alien was relieved or discharged from such liability for training or service because he was an alien," but argues that such classification was arbitrary and illegal, because (i) he had applied for withdrawal of his application and (ii) the applicable Selective Service regulations required that he be placed in the over 38 years of age class. Section 315, however, does not render a resident neutral alien who claimed relief from service under § 3(a) of the Act eligible for citizenship. (See definition of " 'ineligible for citizenship' " contained in Section 101(a) (19), of the Immigration and Nationality Act.[7]

Moser v. United States, 1951, 341 U. S. 41, 71 S.Ct. 553, 95 L.Ed. 729 and Matter of Laborim (unreported, decided by Board of Immigration Appeals June 19, 1944, and approved by the Attorney General June 27, 1944, set out in full in Monthly Review of Immigration & Naturalization Service, Vol. 11 No. 7 January 1955, pp. 93–94), are urged as authority for granting relief to the petitioner. Neither of these cases is apposite. In the Moser case the Court found that (i) the Revised Form 301 executed by Moser contained no waiver of the right to apply for citizenship; (ii) Moser had sought information and guidance from the highest authority to which he could turn and was advised to sign the said form, (iii) Moser was led to believe he would not lose his rights to citizenship by signing said form, (iv) had he known otherwise he would not have claimed exemption, and (v) the Revised Form 301 was consistent with what Moser believed and claimed. From these facts the Court concluded that Moser "did not knowingly and intentionally waive his rights to citizenship. * * * Considering all the circumstances of the case, we think that to bar [Moser], nothing less than an intelligent waiver is required by elementary

structed not to surrender DSS Form 301. They were advised that the effect to be given Form 301 when followed by Form 165 was a matter to be determined by the courts. A notation to this effect was to be typed on the face of each Form 165 prior to the applicant's signature. Local Board Memo No. 112, as amended Dec. 20, 1943, Part V, pg. 3."

6. Section 315 provides:
"(a) Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.
"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to

whether an alien was relieved or discharged from such liability for training or service because he was an alien." 8 U.S.C.A. § 1426.

7. Section 101(a) (19) of the Immigration and Nationality Act, 66 Stat. 163, 169, 8 U.S.C.A. § 1101(a) (19) provides as follows:
"The term 'ineligible to citizenship,' when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 4(a) of the Selective Service Act of 1948, as amended (62 Stat. 605; 65 Stat. 76), or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts."

fairness". Moser v. United States, supra, 341 U.S. at page 47, 71 S.Ct. at page 556. Matter of Laborim, supra, antedates the Immigration & Nationality Act and involves, not a petition for naturalization but one for voluntary departure and preexamination in lieu of deportation. Laborim had filed a Form 301 but, as the Board pointed out, he did so under the mistaken impression that if inducted he could not send an allotment to his wife and two children in Portugal and when he discovered that it would be possible to send money abroad to his family, he attempted to withdraw his claim to military exemption. The matter was reopened and Laborim was permitted to show that after learning the facts he had offered to serve in the Army.

In the matter sub judice, the petitioner did not labor under any erroneous impressions, he did not seek information and guidance from the highest authority to which he could have turned or to any authority at all, he was not led to believe that he could subscribe, swear to and file Form 301 and still retain rights to citizenship. He was content to take the advice of a friend, also a neutral alien who had claimed exemption. That he knowingly and intentionally waived his rights to citizenship is demonstrated beyond peradventure by his surrender of his "first papers"—his declaration of intention to become a citizen. It evidences unmistakably that he filed the Form 301 with a total awareness of the consequences of his act and a renunciation of his inchoate privilege to be naturalized.

"Naturalization is a privilege, to be given, qualified, or withheld as Congress may determine, and which the alien may claim as of right only upon compliance with the terms which Congress imposes." United States v. Macintosh, 1931, 283 U.S. 605, 615, 51 S.Ct. 570, 572, 75 L.Ed. 1302. Congress determined to withhold that privilege from neutral aliens who claimed exemption from military service when the very existence of our country was threatened. It is not within the province of the Courts to alter that determination.

The petition for naturalization is denied.