Patrick Joseph GILLIGAN, Appellant,

v.

Lewis D. BARTON, District Director, Immigration and Naturalization Service, Appellee.

No. 16073.

United States Court of Appeals
Eighth Circuit.

April 23, 1959.

Howard Kanefield, St. Louis, Mo. (Murray Steinberg and Richard Marx, St. Louis, Mo., on the brief), for appellant.

Noel L. Robyn, Asst. U. S. Atty., Clayton, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by Patrick Joseph Gilligan from an order of the District Court entered June 6, 1958, denying his petition for naturalization, filed on May 23, 1956, upon the ground that he was ineligible for citizenship by virtue of Section 315(a) of the Immigration and Nationality Act of 1952, 66 Stat. 163, 242, 8 U.S.C.A. § 1426(a).

Gilligan, a resident of St. Louis, Missouri, was born in Ireland February 11, 1927; arrived in New York October 9, 1950; reached St. Louis about October 21 of the same year; first lived with an uncle in that City; and went to work at the Scullin Steel Company as a timekeeper. In April of 1951 Gilligan received his first notice from his local Se-

lective Service Board. Following the advice of his foreman, his uncle, and other employees at the Scullin Steel Company, with whom he discussed his situation, he went to his local board and requested an alien exemption form, and signed and apparently verified it before Allen A. Reed, Local Board Auditor. His application read as follows:

"CPA
"Selective Service System
"Application by Alien for Relief from Training and Service in the Armed Forces.

"(Date) May 2, 1951.
"Selective Service Board No. 101
"St. Louis County Court House
"Clayton, Missouri
"(Stamp of Board or Address of Sender)

"State of Missouri ⎱
"County of St. Louis ⎰ ss.

"I, (Last name) Gilligan (First Name) Patrick (Middle name) Joseph do solemnly swear (or affirm) that I am a citizen of (Country) Ireland; I am a registrant of Local Board (Number) 101, (City) Clayton (County) St. Louis (State) Missouri; my Selective Service number is 23 101 27 711; my alien registration number is 7875665; and that I last entered the United States on (Month, day, and year) October 9, 1950 at (Place of entry) New York on (Name of vessel) Mauretania as (Specify passenger, crew member, stowaway, or other) passenger.

"I hereby apply for relief from liability for training and service in the armed forces of the United States. I have read the Notice given below, and I understand that I will forever lose my right to become a citizen of the United States, and I may also be prohibited from entry into the United States or its terri-

tories or possessions as a result of filing this application.

"Subscribed and sworn to before me this second day of May, 1951.

"/s/ Patrick J. Gilligan
"(Signature of registrant)
"/s/ Allen A. Reed
"(Signature of officer)
"Local Board Auditor
"(Designation of officer)

"Notice

"Section 4(a) of the Selective Service Act of 1948,[1] provides in part that 'Any citizen of a foreign country, who is not deferable or exempt from training and service under the provisions of this title (other than this subsection), shall be relieved from liability for training and service under this title if, prior to his induction into the armed forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States.' * * * "

On May 3, 1951, the local board sent Gilligan a Classification Questionnaire, which he returned, and from which we quote the following:

"Name: Patrick Joseph Gilligan.
"This questionnaire is intended to furnish the local board with information to enable it to classify you.
"The registrant is required to sign the certificate on page 7."

Gilligan's statement on page 7 was:

"I have signed SS Form No. 130 (Alien Exemption Application).
"/s/ Patrick Joseph Gilligan."

On August 8, 1951, he was classified IV–C, as a registrant who as an alien had, prior to induction, made application to be relieved from liability for training and service in the armed forces of the United States. See 16 F.R. 384, paragraph (c) of § 1622.18 of Part 1622. He had previously, on June 6, 1951, been classified I–A. Notice of his classification as IV–C was mailed to him August 10, 1951, and he remained in that classification until May 20, 1953, when he was again classified I–A, although he was then beyond the maximum draft age of twenty-six. See 15 F.R. 1325, § 1622.22. On June 3, 1953, he was classified V–A, overage.

The Immigration and Nationality Act of 1952, so far as pertinent, provides:

"Sec. 315(a) * * * any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces * * * of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System * * * shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

The Selective Service records respecting Gilligan show that from August 8, 1951, until May 20, 1953, he was, by virtue of his classification as IV–C, relieved of liability for training and service in the armed forces of the United States.

By the terms of Section 315(a), to become permanently ineligible for citizenship an alien must be one "who applies or has applied for exemption," and also one who "is or was relieved or discharged from such training or service on such ground." Ceballos v. Shaughnessy, 352 U.S. 599, 606, 77 S.Ct. 545, 549, 1 L.Ed. 2d 583.

At a hearing before the District Court upon his petition for naturalization, Gil-

---

1. 62 Stat. 604, 605–606, 50 U.S.C.A.Appendix, § 454(a).

ligan testified substantially as follows: that he intentionally signed the application for alien exemption from military service, but had no recollection of reading those portions of the application to the effect that, by so doing, he would lose his right to become a citizen of the United States; that he was not advised, and did not know at the time he signed the application, what effect the signing of it would have; that he was classified as IV–C until May 1953, when his classification was changed to I–A; that he then went to the local draft board and saw there a Mrs. Dietrich; that she explained that he had been reclassified, and that people who had signed anything detrimental to their citizenship "were more or less given a second chance to reconsider"; that she pointed out that if Gilligan insisted upon his exemption, it would bar him from citizenship; that she told him there was a form he could sign which would grant his exemption as an alien; that he refused to sign the form because he was not willing to lose his rights to citizenship, and stated that he was willing to remain I–A; that Mrs. Dietrich said that if he refused to sign a "new affidavit" he could be called for service; that he remained in the I–A classification for two or three months, until he was given the overage classification, V–A.

Gilligan also testified that he had had eleven years of schooling in Ireland, and there attended the equivalent of a high school; that he spoke and read English; and that he had taken a few night classes at the St. Louis University, where he first enrolled in February 1951.

Mrs. Dietrich, who was called as a witness by Gilligan, testified that she was, in 1953, in charge of the Clayton Draft Board Number 101, her duties being mainly clerical; that she did not recall a conversation with Gilligan in May of 1953 with regard to his continuing in I–A status or reverting to IV–C status; that she did not recall "one individual when" she had "many like that"; that she recognized the signature of Mr. Reed on Gilligan's application for relief from military service; that Reed was an employee of the Selective Service System, associated with the State Headquarters, and had been a public servant for fifteen or sixteen years.

The report of C. J. Long, designated under the Immigration and Nationality Act to conduct preliminary examinations upon petitions for naturalization, was received in evidence. It shows that Gilligan was given a preliminary examination on his petition for naturalization on May 23, 1956, and May 23, 1957. The report also shows that Gilligan's testimony before the Examiner was, in substance, the same as that which he gave later in court, namely, to the effect that he had intended to obtain exemption from military service as an alien, but, when he signed the application, was unaware of the effect of making such an application upon his right to citizenship. We quote the following from the report of the Examiner:

"Petitioner [Gilligan] was not misled by the tenor of the Application for Exemption. That form was not the result of negotiation between the Irish Legation and the State Department. He did not seek guidance from the highest authority to whom he could turn and he never voluntarily asked to withdraw his application for exemption or applied for voluntary induction. His subsequent reclassification to 1A on the basis of the record was not made at Petitioner's request, but on the local board's own motion. When the reclassification to 1A was made on May 20, 1953, petitioner had passed his 26th birthday on February 11, and thereafter was not required to register. From the date of exemption from service on August 8, 1951 until February 11, 1953, the only period when Petitioner otherwise could have been called for service, Petitioner was exempted from service. * * *."

The Examiner made findings of fact and concluded that Gilligan had become ineligible for citizenship by virtue of the provisions of Section 315 of the Immigration and Nationality Act. The Examiner in his report recommended to the District Court that the petition of Gilligan for naturalization be denied.

Gilligan contends that the District Court erred in denying his petition, because (1) there was no showing of an intelligent waiver by him of his right to citizenship; and (2) there was no showing of relief from service or training in the armed forces, within the meaning of Section 315.

■ For the purposes of this opinion, we shall assume, without deciding, that if Gilligan was in fact ignorant of the legal consequences of making application for exemption as an alien, his ignorance would render him eligible to citizenship. It is apparent, however, that the first of his contentions is obviously without merit, since proof of his asserted ignorance depends entirely upon his uncorroborated testimony. The District Court, which saw and heard Gilligan, a highly interested witness, was the trier of the facts and the judge of his credibility and the weight of his evidence, and was not compelled to accept his testimony in that regard at face value, and was justified in rejecting it as unreasonable or improbable. A reversal by this Court of the order appealed from would be equivalent to directing the trial court to believe evidence which it did not credit or which it found to be unconvincing. See and compare, Noland v. Buffalo Ins. Co., 8 Cir., 181 F.2d 735, 738 and cases cited; I. C. Sutton Handle Factory v. National Labor Relations Board, 8 Cir., 255 F.2d 697, 698. The case of Moser v. United States,

341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, cited in support of Gilligan's first contention, is of no help to him for the reason that the trial court in that case had found the facts in Moser's favor and had granted his petition for naturalization, and had then been reversed by the Court of Appeals, 2 Cir., 182 F.2d 734, which, in turn, was reversed by the Supreme Court.

We think that Gilligan's contention that he was not given relief from liability for military service within the meaning of Section 315(a) is equally without merit. Gilligan, an intelligent man, of draft age, applied for exemption as an alien from military service. His application was granted, and resulted in his being classified as exempt from such service from August 8, 1951, until he had passed beyond draft age. Unless the plain language of Section 315(a) is to be ignored, Gilligan, by virtue of his application, was relieved from liability for training and service in the armed forces of the United States, and therefore became ineligible for citizenship. See and compare, Ballester v. United States, 1 Cir., 220 F.2d 399, 405. The District Court cases cited by the appellant are not helpful. We are concerned, in the instant case, only with the action of the District Court upon the record presented to it, and not with what other District Courts may have done under other circumstances or upon different evidence.

The question whether eligibility to citizenship should be restored to men, such as Gilligan, who took advantage of their alienage to escape the draft, and now wish to avoid the legal consequences of what they did, is a question for Congress, and not for the courts.

The order appealed from is affirmed.