Petition for Naturalization of
Carl R. BERGMAN.
No. 20885.

United States District Court
D. Minnesota,
Fourth Division.
June 17, 1959.

Benedict S. Deinard, Minneapolis, Minn., for petitioner.

Wood W. Remington, Naturalization Examiner, Immigration & Naturalization Service, St. Paul, Minn.

DEVITT, District Judge.

Carl R. Bergman, a native of Sweden, and a resident here since 1929, petitions to be naturalized a United States citizen. The Immigration & Naturalization Service opposes the petition on the ground that Bergman is barred from citizenship because, during World War II, he claimed and obtained exemption from service in the armed forces of the United States. The government cites Sections 315(a) and (b) of the Immigration & Nationality Act of 1952, 66 Stat. 163, 242, 8 U.S.C.A. § 1426(a, b), which, so far as are pertinent, read as follows:

"Sec. 315(a) * * * any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces * * * of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System * * * shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

The Selective Service System records reflect that on October 16, 1940, Bergman registered under the Selective Service Training Act of 1940, amended 50 U.S.C.A.Appendix, § 301 et seq.[1] Local Draft Board No. 17 in Minneapolis, Minnesota, with which he had registered, mailed him a Selective Service questionnaire and on the basis of the fact therein reflected that he was a resident neutral alien, automatically classified him IV–C (not acceptable for service because of neutral alienage). He continued in this classification until 1942, at which time Local Draft Board officers were instructed to have IV–C registrants complete an Alien's Personal History and Statement, DSS Form 304. On April 7, 1942, the Draft Board sent Bergman this form. Apparently pending the return of it, the Local Board reclassified petitioner in I Tentative (available for service) on April 10, 1942. Subsequently, on April 16, 1942, a notice to appear for a pre-induction physical examination was forwarded to Bergman.

Shortly thereafter, on April 20, 1942, petitioner executed and filed the DSS Form 304. The Board then reclassified him again in category IV–C. In filling out the answer to question 41 on that form, Bergman indicated that he objected to service in the armed forces of the United States. Immediately below

1. Now 50 U.S.C.A.Appendix, § 451 et seq.

the question as to objection to service, appeared the following:

"If you are a citizen or subject of a neutral country, and you do not wish to serve in the land or naval forces of the United States, you may apply to your local board for Application by Alien for Relief from Military Service (Form 301) which, when executed by you and filed with the local board, will relieve you from the obligation to serve in the land or naval forces of the United States, *but will also debar you from thereafter becoming a citizen of the United States.*" [Emphasis added.]

A few days later, on April 23, 1942, Bergman executed an application by Aliens for Relief from Military Service, DSS Form 301, which had been provided him by the Local Board. In pertinent part it states:

"I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, * * * *I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States.*" [Emphasis added.]

It is undisputed that Bergman has not rendered military service. It thus appears from the foregoing recital of the uncontested facts, most of which are taken from the records of the Selective Service System, that Bergman applied for and was relieved from military service by virtue of his status as a neutral alien. Under the clear wording of the statute, he thus became permanently ineligible for citizenship. See Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 606, 77 S.Ct. 545, 1 L.Ed.2d 583.

But Bergman argues that he did not read the italicized portions of DSS Forms 304 and 301, supra, and did not understand that by requesting exemption from military service he was foreclosing his eligibility for citizenship.

But the effect of his action was clearly stated in plain language in both forms. He wrote, read and understood the English language. The import of his conduct was fully explained to him by the then Chairman of the Draft Board on April 20. Although Bergman denies a conversation of that nature, the Chairman, Alfred J. Nelson, clearly recalled it and stated that the applicant was the only alien who petitioned for exemption during his tenure as Board Chairman.

It is my view that the petitioner made an intelligent waiver of the privilege of becoming an American citizen by claiming military exemption. This case is not governed by the holding in Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, in which the Supreme Court affirmed the trial court in its finding that the applicant did not make the required intelligent waiver.

It is also urged that even if the petitioner had intelligently requested exemption, his subsequent request for induction and his conduct in taking a physical examination preparatory to military service removed the bar.

The Selective Service records indicate that the petitioner was again reclassified on March 23, 1943. It is not clear from the records what prompted this action on the part of the Board. The petitioner contends that some time prior to March, 1943 he learned from a friend that any resident neutral alien who held a Class IV-C exemption was precluded from applying for citizenship. As a result of this conversation, petitioner claims that he contacted his Draft Board and requested that he be inducted into service. He was called for a pre-induction physical examination more than a year later on February 28, 1944. He was found physically unfit for service and was classified IV-F.

█ Even assuming that this conduct constituted a withdrawal of his request for exemption, petitioner cannot void the legislative bar to citizenship. Congress made no provision for a withdrawal of an election once made. Nor is the bar

to citizenship removed by subsequent eligibility for service. See Petition for Naturalization of Velasquez, D.C.S.D. N.Y.1954, 139 F.Supp. 790, affirmed 2 Cir., 1957, 241 F.2d 126. "Naturalization is a privilege, to be given, qualified, or withheld as Congress may determine, and which the alien may claim as of right only upon compliance with the terms which Congress imposes." United States v. Macintosh, 1931, 283 U.S. 605, 615, 51 S.Ct. 570, 572, 75 L.Ed. 1302.

"The question whether eligibility to citizenship should be restored to men, such as [Bergman], who took advantage of their alienage to escape the draft, and now wish to avoid the legal consequences of what they did, is a question for Congress and not for the courts." Gilligan v. Barton, 8 Cir., 1959, 265 F.2d 904, 908.

The petition is denied. The Examiner will please prepare Findings of Fact, Conclusions of Law and Order for Judgment, and a Form of Judgment with copies to petitioner's attorney.