**Elias Mateo PRIETO**

v.

**UNITED STATES of America.**

No. 18554.

United States Court of Appeals
Fifth Circuit.

April 13, 1961.

———◆———

Horace C. Hall, Hall & Hall, Laredo, Tex., for appellant, Elias Mateo Prieto.

Myron M. Sheinfeld, Asst. U. S. Atty., William B. Butler, U. S. Atty., Houston, Tex., for the United States.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Before us for decision is an appeal from an order denying the appellant's petition for naturalization. The appellant is a citizen of Mexico. He was born in 1931 and admitted to the United States for permanent residence in 1933. In 1949 the appellant registered with his local draft board at Laredo, Texas, as the law [1] required. He was classified as I A (available for induction into military service) and on March 8, 1951, he was given notice to report on March 22, 1951, for a physical examination. Thereafter, on several occasions, the appellant discussed the matter with the clerk of the draft board to find out how he could keep from going into military service. On one occasion the appellant was accompanied to the office of the draft board by

1. 50 U.S.C.A.Appendix, § 451 et seq.

a Captain in the Mexican Army who was a friend of the Prieto family. The appellant told the clerk, and reiterated the statement from the witness stand, that his mother objected to his going into the service because she associated the illness of the appellant's older brother with the army, although the brother had been out of the service for five or six years and his illness was not in any way connected with his military service. The draft board clerk told the appellant that he could be relieved from military service by executing "Form SSS 130. Application by Alien for Relief from Training and Service in the Armed Forces." The appellant had been furnished with a copy of this form some days, perhaps a week or more, before it was signed. The clerk urged the appellant to submit to a physical examination before considering the execution of this form. The form recited in underscored bold type that the effect of executing it would be to debar the signer from becoming a citizen of the United States. It was admitted by the appellant that he fully understood the effect of executing the form. He testified that he did it "against my own better judgment, because mother wanted me to sign it."

The appellant's brother died at a Veterans Hospital in Chicago and his body was expected to reach Laredo on or within a few days after March 19, 1951. On the morning of that day the appellant went to the office of the draft board to execute the form. Responding to a question as to the purpose of his going he said, "Well, my mother had instructed me to go sign that form." He read the form and understood it. He was told by the draft board clerk that it was a hard thing to sign. He executed it and was given an exemption from military service. The appellant was then nineteen years old and a student at Laredo Junior College. By a statutory amendment effective in 1951,[2] aliens were no longer entitled to an absolute exemption merely by applying for it. The appellant was reclassified as I A, but being then and thereafter a student he was deferred from military service.[3] The appellant has now attained the age of thirty.

The appellant places his primary reliance upon a memorandum[4] issued by the Director of the Selective Service System on May 6, 1949. The appellant contends that the Board was required to determine whether he was eligible for deferment as a student before permitting him to file an application for exemption as an alien. It may well be that a Local Board Memorandum is merely advisory, and is not to be given the mandatory effect of a regulation. Cf. United States ex rel. Lawrence v. Commanding Officer, D.C.Neb.1945, 58 F. Supp. 933. If the Memorandum be mandatory, it does not follow that it imposes on the local draft boards the duty for which the appellant contends. The language used by Congress[5] in creating

2. 50 U.S.C.A.Appendix, § 454(a) as amended.

3. Selective Service Regulations 1622.9 and 1622.10(a) (e).

4. "A registrant will not be eligible to file an Application by Alien for Relief from Military Service (SSS Form No. 130) with the local board until it has been determined that he does not qualify for deferment or exemption under Selective Service Regulations. However, after this determination has been made, the eligible registrant may file such an application at any time prior to his induction. Therefore, no qualified alien will be denied the privilege of filing an application between the time that it has been determined that

he is not deferrable or exempt and the time of his actual induction." Local Board Memorandum No. 23, SSS Reg. 622.18 § 2(b).

5. "Any citizen of a foreign country, who is not deferable or exempt from training and service under the provisions of this title (other than this subsection), shall be relieved from liability for training and service under this title if, prior to his induction into the Armed Forces, he has made application to be relieved from liability in the manner prescribed by and in accordance with the rules and regulations prescribed by the President; but any person who makes such application shall thereafter be debarred from becoming a

the exemption contains no language requiring the Board to assume the difficult, if not impossible, task [6] of investigating facts and determining whether one who has registered for service is entitled to come within any one or more of the numerous grounds for deferment. The statute [7] requires that "the facts be presented to the local board" showing that the registrant was "satisfactorily pursuing a full-time course of instruction." It is the general rule that one who would avoid the performance of military service must carry the burden of showing that he is entitled to deferment or exemption. Harris v. Ross, 5 Cir., 1944, 146 F.2d 355; Sullivan v. Swatzka, 9 Cir., 1945, 148 F.2d 965. Such is the rule that Congress intended to apply in situations such as the one before us. It seems clear that Congress did not intend to require that a Local Board take the initiative in determining whether a ground for deferment existed before it could allow an alien to exercise the privilege afforded him by the statute to assert his claim to an exemption as a citizen of a foreign country.

We cannot see that the death of the appellant's brother shortly before appellant claimed his exemption provides any basis for granting him relief from the effect of his act. The brother's death may have been one of the causes which induced the appellant's mother to insist upon the making of the claim of the exemption, and it seems probable that the appellant's primary motive in signing the form was to satisfy his mother. Although we may sympathize with the plight in which the appellant found himself, yet the filial duty of the son does not afford any escape from the effect of the statute. The appellant was not misled in any respect. He was fully aware of the consequence of taking the exemption. He made an election and the making of it was deliberate and after seeking advice. He made his voluntary election against his better judgment but having made it and having had the benefit of it, he must be held to the result that Congress has imposed. Jubran v. United States, 5 Cir., 1958, 255 F.2d 81; Kahook v. Johnson, 5 Cir., 1960, 273 F.2d 413. The Local Board had the power, where there was a death in the family, to postpone induction for as much as 60 days even after an order to report for induction had been issued. 32 C.F.R. § 1632.2 (a). The appellant had only been directed to report for a physical examination.

The appellant has tried to bring himself under the doctrine of Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729. In the Moser case the alien was misled into the belief that he would not forfeit his rights to become a citizen. Here the appellant was fully aware of the effect of his election as was the case in Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583, and Savoretti v. Small, 5 Cir., 1957, 244 F.2d 292, in which the Moser case is distinguished.

The judgment of the district court is Affirmed.

citizen of the United States." Selective Service Act of 1948, Sec. 4(a), 62 Stat. 604, 606.

6. See United States v. Rubinstein, 2 Cir., 1948, 166 F.2d 249, certiorari denied Foster v. United States, 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146.

7. "Any person who, while satisfactorily pursuing a full time course of instruction at a college, university, or similar institution of learning, is ordered to report for induction under this title, shall, upon the facts being presented to the local board, have his induction under this title postponed (A) until the end of such academic year or (B) until he ceases satisfactorily to pursue such course of instruction, whichever is the earlier. Nothing in this paragraph shall be deemed to preclude the President from providing, by regulations prescribed under subsection (h) of this section, for the deferment from training and service of any category or categories of students for such periods of time as he may deem appropriate." Selective Service Act of 1948, Sec. 6(i) (2), 62 Stat. 604, 612.