**Alfons Simon KEIL, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17004.**

United States Court of Appeals
Ninth Circuit.

May 25, 1961.

Jackson & Hertogs, by Joseph S. Hertogs, San Francisco, Cal., for appellant.

Laurence E. Dayton, U. S. Atty., Charles Elmer Collett and James F. Hewitt, Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

PER CURIAM.

The district court denied Alfons Simon Keil's petition for naturalization by reason of 8 U.S.C.A. § 1426 which renders ineligible for citizenship any alien who applies for and is granted an exemption from military service on the ground of alienage.[1] Appellant seeks review of the district court's order.

In 1953, the appellant and his wife left Germany and were lawfully admitted to the United States for permanent residence. Shortly afterward appellant, accompanied by his English speaking aunt, went to the local draft board to register pursuant to 50 U.S.C.A.Appendix, § 453. He was given a selective service questionnaire which was taken home, completed with the assistance of his brother, and sent back to the draft board. An application for exemption from military service was then mailed to the appellant on

1. Section 1426 reads:

"(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on

such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

February 17, 1954. On this form immediately above the signature line is the printed statement: "I have read the provisions of Section 315 of the Immigration and Nationality Act of 1952 [8 U.S.C.A. § 1426], given below, and I fully understand the meaning thereof." The section of the Act referred to appears in full at the bottom of the page. On March 1, 1954 the form, filled out in his wife's handwriting and bearing appellant's signature, was returned to the draft board. The appellant was granted the exemption and has never been called into the service.

In 1959, the appellant filed his petition for United States citizenship in the district court. In due course, the matter was referred to a naturalization examiner for investigation. At the hearing before the examiner, both the appellant and his wife were asked about the selective service questionnaire and application for exemption. Each of them distinctly remembered the questionnaire, but neither professed any recollection of the application for exemption although they did admit the authenticity of the handwriting and appellant's signature. They also testified that neither of them could understand or speak English at the time the application was completed. The examiner recommended the disallowance of the petition. Thereafter, a hearing was held before a district judge. The appellant's wife and a number of other witnesses testified to the effect that appellant did not understand the English language during the time in question. Appellant, however, did not take the stand, but rather rested on the testimony he had previously given.

On this record the appellant attempts to bring himself within the rule of Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, which requires that the alien, when executing an application for exemption, must knowingly and intelligently waive his right to citizenship in order to be barred from naturalization. The appellant argues that "he did not have sufficient understanding of the English language to enable him to comprehend the full import and legal consequences of * * *" the application for exemption from military service.

However, in answering this same argument the district court stated:

"It need not, however, be concluded that because the petitioner did not understand English that he necessarily did not understand the exemption application at the time it was filled out even though such form was in English. Direct evidence as to the understanding of the petitioner at the time the exemption application form was completed is slight. Both petitioner and petitioner's wife testified that they did not remember having filled out the form or even having seen it before the hearing upon the petitioner's citizenship application on June 30, 1959, even though the form was admittedly in the handwriting of the petitioner's wife and bore the signature of the petitioner.

"The record indicates that the petitioner had the exemption form in his possession between six to nine days before it was returned to the draft board * * *. [T]he form itself correctly, accurately and completely filled out, constitutes at least some evidence that the person who filled out the form understood the language appearing on its face. Petitioner furnished correctly such information as his local draft board number, alien registration number, nationality, and the country under whose treaty exemption was claimed * * *. Upon the evidence presented the court finds that the petitioner did knowingly and intelligently waive his right to citizenship."

In our opinion the decision of the district court and the recommendation of the naturalization examiner find ample support in the evidence and we therefore affirm.