**In re Petition for Naturalization of Adolf O. FUCHS.**

**No. 56902.**

United States District Court
D. Rhode Island.
July 15, 1963.

Fried & Mailman, New York City, Elmer Fried, New York City, of counsel, for petitioner.

Perry J. Saftel, Gen. Atty. (Nationality), U. S. Immigration and Naturalization Service, Providence, R. I., for respondent.

DAY, District Judge.

This is a petition for naturalization by Adolf O. Fuchs, a Swiss national, who entered the United States for permanent residence on October 28, 1952. In his "Application To File Petition For Naturalization" dated June 29, 1960, and submitted on May 9, 1961, he stated that he had registered under the United States Selective Service laws on April 29, 1953 and that he was exempted from service because of alienage. The petition is opposed by the Immigration and Naturalization Service which contends that he is ineligible for citizenship under the provisions of Sec. 315 [1] of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426.

At the time of his entry into the United States, the petitioner had received more than the equivalent of our high school education and was able to read and write English without any difficulty. According to his draft questionnaire, after receiving additional intensive training he was sent to this country by his Swiss employer to serve as "liaison man" between its home office and its branch offices in various parts of the world. Shortly after his arrival he established his home in Brookline, Massachusetts, and on April 29, 1953, registered under the Universal Military Training and Service Act with Local Draft Board No. 25 in that town. Subsequently, following the receipt by said

1. Sec. 315 of the Immigration and Nationality Act Provides as follows:
"Sec. 315(a). Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corp of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

Board of his completed classification questionnaire, required under Selective Service Regulations, he was classified 1–A on June 23, 1953.

Petitioner testified before me that upon being informed of his classification he immediately contacted the Swiss Legation in Washington, D. C. and was advised that this classification meant he was subject to induction into the armed forces of the United States. He also testified that the Legation advised him that as a Swiss national he was exempt from such military service under the Treaty of Friendship and Commerce between the United States and Switzerland, dated November 25, 1850, and that it would write a letter to the United States Government explaining that he was a Swiss citizen and "this would take care of it." It appears that early in July, 1953, petitioner received a notice from said Board to report for a physical examination. He again contacted said Legation and, according to him, he was advised that it had written a letter on his behalf and that he would not have to report for the physical examination.

While he professed having only a vague recollection of a subsequent visit by him, on July 23, 1953, to said Board concerning his classification as 1–A, he gave a surprisingly minute account in certain limited respects, favorable to himself, as to what transpired between him and the clerk of said Board on that occasion.

He admitted that on said occasion, after he had made known his desire to claim exemption, he was handed a form of application for exemption from military service which contained below the line for his signature a copy of Sec. 315 of the Immigration and Nationality Act of 1952. He testified, " * * * I flew over the form fast * * * and I decided I wasn't going to sign away my right to ever become an American citizen", and that he told the clerk he was unwilling to sign it. He denied having any recollection of what the clerk told him would be the effect of his claiming exemption or that he was given a copy of said Sec-

tion 315 of said Act. His selective service file contains a copy of a portion of the form of claim for exemption which was submitted to him for his signature. Bearing the date July 23, 1953, it reads as follows:

"I, a national of Switzerland, hereby apply for exemption from military service in the Armed Forces of the United States on the grounds that I am an alien and am entitled to such exemption under the terms of a treaty between Switzerland and the United States. My alien registration number is A.8407809. I have read the provisions of Section 315 of the Immigration and Nationality Act of 1952, given below, and I fully understand the meaning thereof.

"Signature"

On this form there appear the following notations in the handwriting of the clerk of said Board. "R–19–25–29–394 Adolf Otto Fuchs—Did not sign, Given copy of Sec. 315 I. & N. Act '52. Said State Dept. Said Not Necessary" and the stamped date of July 23, 1953.

Although the clerk of said Board, who also testified, had no present recollection of her conversation with petitioner, she recalled that he was the only registrant with said Board who had claimed exemption from service under a treaty and identified the above notations as having been made by her.

I am satisfied that petitioner intended to claim exemption from military service on July 23, 1953, and that the clerk advised him that if he executed the form submitted to him for his signature he would be permanently ineligible for citizenship. I am also satisfied that he was in fact given a copy of said Section 315, and that he entertained no doubt as to its meaning, but erroneously harbored the notion that he could somehow escape its effect if he did not sign an application for exemption which contained its provisions.

It further appears that on July 3, 1953, pursuant to petitioner's inquiry after he was advised of his classification

as 1–A, and with his consent, the Minister of Switzerland in a communication to the Department of State applied for his exemption as a treaty national under the provisions of Section 1622.42(c) [2] of the Selective Service Regulations, 32 C.F.R. Sec. 1622.42(c). This application was subsequently approved by the Department of State and on July 22, 1953, notice of its approval was received at the office of said Board with instructions to take appropriate action thereon. It does not appear when this communication was brought to the attention of the members of said Board, but in any event petitioner was reclassified on August 8, 1953 as 4–C under the provisions of said Section 1622.42(c) of said Regulations, and was duly advised of his reclassification.

Thereafter, on April 14, 1954, the State Director of Selective Service for the Commonwealth of Massachusetts notified the Chairman of said Local Board No. 25 that, although a review of the petitioner's draft file revealed that while petitioner had established that he was exempt from military service under the terms of the treaty between the United States and Switzerland, said file did not contain "a written application for exemption from military service on the basis of his alien status under the treaty with the knowledge of Section 315 of the Immigration and Nationality Act of 1952." And he further wrote in said letter: "It might be advisable to correspond with Mr. Fuchs and request that he submit such a written application; if he fails or refuses to comply, reclassification action would be in order."

On April 21, 1954, the following letter signed by the clerk of said Board was sent to the petitioner:

"A review of your file reveals that we have no written application from you for exemption from military service on the basis of your alien

status, although that status has been established.

"Will you, therefore, at your earliest convenience, submit a letter requesting exemption under the terms of the treaty between the United States and Switzerland."

Under date of April 28, 1954, the defendant sent the following letter to said Board:

"Dear Sirs:
"Your Ref. R–19–25–29–394
"I have received your letter dated April 21st, 1954 and request exemption from military service under the provisions of Section 1622.42(c) of the Selective Service Regulations on the ground that I am an alien claiming exemption under a treaty.
"According to the information of the competent authorities in Washington (US-Department of State and National Headquarters of the Selective Service System) this declaration is in conformity with Section 3(a) 3 of Local Board Memorandum No. 39 and should therefore be sufficient for my classification in IV–C.

"Very truly yours,
"/s/ Adolf Otto Fuchs"

After receipt of this letter, no change was made in petitioner's classification until May 19, 1955 when he was reclassified IV–A (over the age for liability for military service).

In explanation of the phraseology of this letter petitioner testified that he had copied its contents verbatim from a printed form which his counsel produced at the hearing before me, and which petitioner testified was sent to him by the Swiss Legation which he had contacted after receiving said letter dated April 21, 1954 from said Board. He also testified that the Swiss Legation had sent him a covering letter to the effect that if he re-

2. Said regulation provided:
"§ 1622.42(c) In Class IV–C shall be placed any registrant who is an alien and who is certified by the Department of State to be, or otherwise establishes that

he is, exempt from military service under the terms of a treaty or international agreement between the United States and the country of which he is a national."

plied to the Board as set forth in said form he "would not get into any trouble." When pressed as to the whereabouts of this letter, he testified he had destroyed it. Although represented by experienced counsel, there was no showing that either petitioner or his counsel made any effort to secure a copy of said letter from said Legation prior to the hearing of the instant petition. Petitioner admitted that prior to sending his letter he had not contacted any "competent authorities in Washington" and disclaimed all knowledge of Local Board Memorandum No. 39, although his letter referred specifically to Section 3(a) (3) of Local Board Memorandum No. 39. Said Section 3(a) (3) provides as follows:

"(3) If the registrant refuses to sign a request for exemption as an alien on a paper containing the provisions of section 315 of the Immigration and Nationality Act, the local board should accept his request on paper not containing such provisions. In this event, however, the local board must, by letter or otherwise, advise the registrant of the provisions of section 315 of the Immigration and Nationality Act, and his selective service file *must* show positively that he signed his request for exemption with knowledge of the provisions of that section."

Observing the petitioner closely, as I did, I do not believe his explanation as to the source of the phraseology of his letter of April 28, 1954, claiming exemption from military service. I do not believe its source was the Swiss Legation nor do I believe that it was sent with a covering letter to the effect claimed by the petitioner. In addition, I do not believe that petitioner was unaware of the contents of said Section 3(a) (3). On the contrary, I am convinced that from and after July 23, 1953, when he refused to sign the form submitted to him by the clerk of said Board, he was fully aware of the provisions of Sec. 315 of the Immigration and Nationality Act of 1952 and its effect, if he claimed exemption from military service as an alien under said treaty. In my opinion he stubbornly entertained the notion that he could claim exemption and still be eligible for citizenship at some later date, if he refrained from signing a claim of exemption that referred specifically to said Sec. 315. In this he was clearly in error.

In Ceballos v. Shaughnessy, 1957, 352 U.S. 599, at page 606, 77 S.Ct. 545 at page 549, 1 L.Ed.2d 583 the Supreme Court in construing the provisions of Section 315 of the Immigration and Nationality Act said:

"Section 315 of the 1952 Act enacts a two-pronged requirement for the determination of permanent ineligibility for citizenship: the alien must be one 'who applies or has applied for exemption,' and also one who 'is or was relieved or discharged from such training or service on such ground.'"

In my opinion both of these requirements have been met in this case. The petitioner applied for exemption from military service as a treaty alien and was relieved from service on that ground.

The case of Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 relied upon by the petitioner is clearly distinguishable on its facts. In this case there is no credible evidence that the petitioner was ever misled or that any misrepresentations were ever made to him as to the legal effect of his applying for exemption from military service on the ground that he was a treaty alien and of his being relieved from military service on such ground.

After a careful consideration of all of the evidence and the reasonable inferences to be drawn from it, I am convinced that the petitioner, after July 23, 1953, and when he signed and sent to said Board his application for exemption dated April 28, 1954, was fully aware that his claiming such exemption would forever debar him from American citizenship. In my opinion his "choice of exemption and no citizenship or no exemption and citizenship" was made by him knowingly and intentionally.

Under the circumstances, I must and do conclude that the petitioner is permanently ineligible to become a citizen of the United States. Keil v. United States, 9 Cir., 1961, 291 F.2d 268; Prieto v. United States, 5 Cir., 1961, 289 F.2d 12; United States v. Kenny, 2 Cir., 1957, 247 F.2d 139; In re Petition for Naturalization of Cuozzo, 3 Cir., 1956, 235 F.2d 184; Ballester v. United States, 1 Cir., 1955, 220 F.2d 399. While this may seem to some to be a harsh consequence of claiming the exemption, it is one which Congress is clearly authorized to impose and has imposed.

The petition for naturalization is, therefore, denied.