**In re Petition for Naturalization of Stefan Lars GJERSTAD.**

**No. 174311.**

United States District Court
N. D. California.

Nov. 7, 1969.

James R. Canfield, San Francisco, Cal., for petitioner.

Marvin E. Denekas, General Atty. (Nationality), Byron B. Park, San Francisco, Cal., for Immigration and Naturalization Service.

GERALD S. LEVIN, District Judge.

Petitioner Stefan Lars Gjerstad was born and raised in Sweden, having completed his military service in that country and having studied law for two and one half years at Lund University. He came to this country as an immigrant in 1950 at the age of 24 years, nine months, with the intention to further his education in international banking. Finding things to his liking, he thereafter decided to remain permanently.

Petitioner registered for the draft with Local Board No. 43 in San Francisco on November 14, 1950. He was classified I–A on December 14, 1950, and ordered to report for an Armed Forces physical on January 15, 1951. Instead, on January 9, 1951, petitioner went to his draft board and executed SSS Form No. 130 (APPLICATION BY ALIEN FOR RELIEF FROM TRAINING AND SERVICE IN THE ARMED FORCES), which form contained the following statement:

> "I hereby apply for relief from liability for training and service in the armed forces [1] of the United States. I have read the NOTICE given below, and *I understand that I will forever lose my right to become a citizen of the United States,* and I may also be prohibited from entry into the United States or its territories or possessions as a result of filing this application" (Emphasis added.)

Petitioner's application for exemption was granted by the Selective Service System. He was relieved from liability for training and service in the armed forces on January 11, 1951, and was reclassified IV–C. He retained this classification until December 19, 1951, when he was classified V–A (a registrant over 26 years of age).

Petitioner filed his first petition for naturalization without prejudice pursuant to a request for withdrawal. When

---

1. The NOTICE, printed at the bottom of the single sheet of SSS Form No. 130, read:

> Section 4(a) of the Selective Service Act of 1948, provides in part that 'Any citizen of a foreign country, who is not deferrable or exempt from training and service under the provisions of this title (other than this subjection), shall be relieved from liability for training and service under this title if, prior to his induction into the armed forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President; but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States' (Underscoring supplied) [Sic]. 'Under other existing law, an alien who is not a permanent lawful resident of the United States at the time of the execution of this application, thereafter becomes barred from ever making an entry for permanent residence into the United States, including Alaska, Hawaii, Puerto Rico, and the Virgin Islands, unless he enters as a minister of any religious denomination or as a professor of a college, academy, seminary, or university.' "

the present petition was filed, the Immigration and Naturalization Service conducted an investigation [2] concerning petitioner's qualifications for admission to citizenship. The investigation failed to reveal any derogatory information with regard to petitioner's character or loyalty.[3] However, pursuant to the provisions of the Immigration and Nationality Act § 315(a), 8 U.S.C. § 1426(a),[4] the Immigration and Naturalization Service has found that petitioner is ineligible for American citizenship and has recommended that his petition therefor be denied.

 Petitioner now claims that he did not read SSS Form No. 130 before signing it, nor was he advised of the consequences of applying for a draft exemption on the ground of alienage. According to petitioner's uncorroborated testimony, at the time he signed the form he was still a reservist in the Swedish Armed Forces, and had been advised by an official of the Swedish Consulate in San Francisco that he could merely sign a form provided by the Selective Service System and thereby avoid military service in the United States "without prejudicing any future rights" he might have as a resident of the United States. He further stated that before coming to the United States, the American Consul in Stockholm had advised him that he would not be subject to the draft. Petitioner contends that the "bureaucrats" intimidated him ino signing the form,[5] and that therefore he did not "knowingly and intentionally" waive his rights, thus bringing him under the rule expressed in Moser v. United States, 341 U.S. 41, 46–47, 71 S.Ct. 553, 95 L.Ed. 729 (1951), to be discussed hereafter.

We begin with the proposition that petitioner has no right, by the Constitution, statute, or otherwise, to become a naturalized citizen of the United States. As the Supreme Court said in United States v. Macintosh, 283 U.S. 605, 615, 51 S.Ct. 570, 572, 75 L.Ed. 1302 (1931):

"Naturalization is a privilege, to be given, qualified, or withheld as Congress may determine, and which the

2. As required by the Immigration and Nationality Act § 335, 8 U.S.C. § 1446.

3. The only arrest and conviction disclosed occurred in 1951, when petitioner was fined $50 for being under the influence of alcohol in or about an automobile.

4. That section reads:
 "(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States."

5. At the preliminary examination held before Lonell B. Johnson on November 25, 1966, petitioner explained the events at the draft board on January 9, 1951, as follows:
 "Well a lot of people were milling around and I showed the letter—the request to appear—to whoever I was directed to. I then stated that I was still a member of the Swedish Armed Forces and that the Swedish Consulate had informed me that I was not subject to draft and that there was a form that I could sign to exclude me from the military services of the United States. The person then called out to a Mr. Marx, loudly, across the room,—'Hey, Marx, we have another one of those guys for you.' I was directed to Mr. Marx, who was visibly upset and, among other things, stated, 'There should be a law against Consulates like yours —just sign here,' and when I asked him whether any further requirements were necessary, he said, 'No. You will hear from us. You can go now. We have no use for guys like you.' "
 Later testimony at the preliminary examination went as follows:
 "Q. Are you in the habit of signing forms in blank?
 A. Perhaps it is difficult to explain the feeling one has, as newly arrived in a strange country and faced with bureaucrats, of which we have lots back in Sweden. You don't question the authorities. You sign. If you are asked to sign, you sign."

alien may claim as of right only upon compliance with the terms which Congress imposes."

Accord: Kahook v. Johnson, 273 F.2d 413, 414 (5th Cir. 1960).

From this it follows that the burden is upon the alien applicant to show that he is entitled to citizenship in every particular. Any doubts on this matter should therefore be resolved in favor of the United States and against the claimant. Berenyi v. District Director, Immigration and Nationalization Service, 385 U.S. 630, 637, 87 S.Ct. 666, 17 L.Ed.2d 656 (1967); Petition of Giz, 264 F.Supp. 252, 254 (C.D.Cal.1967). See United States v. Macintosh, *supra*, 283 U.S. at 626, 51 S.Ct. 570.

Far from being a confused and illiterate alien, petitioner has stated that he speaks and understands seven languages, including English, and that he had studied English for five years prior to his entry into this country. In addition, petitioner had studied law for two and one half years and was nearly 25 years of age when he first entered the United States in 1950. In Petition of Miranda, 111 F.Supp. 481 (E.D.N.Y.) 1953, the alien claimant had executed a form with his draft board similar to that involved in the instant case, and thereafter sought to avoid its effect by claiming that, at the time of its filing, he did not speak or understand English, nor had the form been read to him or translated for him. The court denied the claimant's petition for citizenship, refusing to rely on his assertions without corroboration. The court noted that, "To accede to this view would require [us] in effect to rule that Local Board 24 accepted a document which had no valid inception." *Id.* Accord: In re Calvo's Petition, 161 F.Supp. 761, 763 (D.N.J. 1958).

It has also been repeatedly held that an alien cannot avoid the consequences of filing a form requesting exemption from military service based on alienage merely by claiming that he is ignorant of, or was not advised of, the legal consequences that would flow from signing—even where he could not understand English at the time of the signing. See, e. g., Ungo v. Beechie, 311 F.2d 905, 907 (9th Cir. 1963); cert. den. 373 U.S. 911, 83 S. Ct. 1301, 10 L.Ed.2d 413 (1963); Kahook, *supra*, 273 F.2d at 414; Gilligan v. Barton, 265 F.2d 904, 908 (8th Cir. 1959).

Petitioner relies heavily on, and seeks to bring himself within the rule of, Moser v. United States, *supra*. In *Moser*, the alien claimant had applied for and been granted exemption from military service in the United States. When he later applied for American citizenship, his petition was denied based on the provisions debarring from citizenship anyone who had applied for and received an exemption from military service based on alienage. Moser proved, however, that pursuant to a treaty [6] between the United States and the country of his nationality, Switzerland, he had requested his local draft board that he be released unconditionally from service under the provisions of the treaty. Thereafter, the Swiss Legation wrote Moser that it had requested the Department of State to exempt him in accordance with the provisions of Article II of the Treaty above mentioned. The letter also informed Moser that he was being forwarded copies of DSS Form 301 *revised* and included the following statement:

"Please note that, through filing of DSS Form 301, *revised*, you will not waive your right to apply for American citizenship papers. The final decision regarding your naturalization will remain solely with the competent Naturalization Courts." (*Id.* 341 U.S. at 44, 71 S.Ct. at 554–555.)

---

6. Article II of the Treaty of 1850, 11 Stat. 587, between the United States and Switzerland provides that,

"The citizens of one of the two countries residing or established in the other,

shall be free from personal military service. * * * "

DSS Form 301 *as revised* stated simply that, "I hereby apply for relief from liability for training and service in the land or naval forces of the United States," and had omitted the line appearing above the signature in the form before revision, "I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States."

The Supreme Court upheld Moser's claim, relying on the fact that Moser had presented documentation of his assurance that his rights to citizenship would not be forfeited, such assurance having come from "highest authority," and that the form Moser signed nowhere indicated that such forfeiture would ensue from his signing. Thus the Court concluded by holding that, "Petitioner did not knowingly and intentionally waive his rights to citizenship." *Id.* at 47, 71 S. Ct. at 556. See Brunner v. Del Guerico, 259 F.2d 583, 586 (9th Cir. 1958).

These facts clearly indicate that the *Moser* case is inapposite to the present situation. Petitioner Gjerstad's assertions that someone in the Swedish Consulate told him that he was exempt from military service in the United States are unsupported and would be insufficient in any event to insulate him from liability for his signing SSS Form No. 130. Neither does petitioner claim that the form was vague, unintelligible or unduly complex as, indeed, it is not. Unlike the *Moser* case, the form involved here clearly and explicitly informed petitioner of the results should he sign the form. The conclusion is inescapable that petitioner signed the form both knowingly and intentionally and that he now stands forever debarred of the right to request American citizenship. See Keil v. United States, 291 F.2d 268, 269 (9th Cir. 1961); In re Fuch's Petition, 220 F.Supp. 129, 130, 132 (D.R.I. 1963); In re Naturalization of Bergman, 173 F.Supp. 880, 882 (D.Minn. 1959).

If petitioner was misled as he asserts, it may be regretful that he is frustrated in his present effort to become a citizen of the United States of America, but such citizenship is a privilege not to be treated lightly. The facts and the law persuade the court that there is no alternative but to deny the petitioner's application for citizenship and it is hereby denied.